· MAMLUCK & Co. *et al. v.* UNITED STATES (No. 1603).[1]

1. LEGISLATIVE HISTORY SHOWING INTENT—ALL PARTS OF STATUTE GIVEN EFFECT.
    Paragraph 356, tariff act of 1913, as reported to the House by the committee, was deliberately amended in the House by the insertion of the words "60 per centum ad valorem" in the first clause. No interpretation will give due effect to this amendment except that the jewelry clause was thereby segregated from the three following clauses of the paragraph and converted into a complete and independent provision. It follows that the words "parts thereof" and "composed of metal" in the fourth clause do not refer to "jewelry" in the first.

2. NECKLACE CLASPS AND WATCH-CHAIN COMPASSES—HOW DUTIABLE.
    Necklace clasps composed of base metal set with imitation precious stones and metal and glass watch-chain compasses, metal being chief value, both articles being conceded to be "parts of jewelry," are dutiable under the last clause of paragraph 356, tariff act of 1913, as "materials of metal, * * * finished or partly finished, * * * suitable for use in the manufacture of any of the foregoing articles in this paragraph," viz, "jewelry, * * * valued above 20 cents per dozen pieces," in the first clause thereof.

3. EVIDENCE—PRESUMPTIONS—COLLECTOR'S FINDING OF FACT PRESUMED CORRECT.
    It is admitted that the clasps are valued above 20 cents per dozen and this necessitates a value above that for necklaces fitted with them. The collector's finding that watch chains fitted with these compasses are valued at more than 20 cents per dozen is presumptively correct, and in the absence of rebutting evidence, is final.

United States Court of Customs Appeals, February 21, 1916.

APPEAL from Board of United States General Appraisers, G. A. 7755 (T. D. 35592).

[Modified.]

*Comstock & Washburn* (*Albert H. Washburn* and *George J. Puckhafer* of counsel) for appellants.

*Bert Hanson,* Assistant Attorney General (*Charles D. Lawrence,* special attorney, of counsel), for the United States.

Before SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

There are two articles of merchandise involved in the present case, both imported under the tariff act of 1913. These are metal necklace clasps valued at more than 20 cents per dozen pieces, and small compasses composed of metal and glass valued at less than 20 cents per dozen pieces. It is conceded for the purposes of this case that both articles are designed for use in the manufacture of jewelry.

The collector classified the necklace clasps as " parts of jewelry," and assessed duty thereon at the rate of 60 per cent ad valorem under paragraph 356 of the act. The compasses were classified as "material composed in chief value of metal, suitable for use in the manufacture of watch charms," and were assessed with duty at the rate of

[1] Reported in T. D. 36198 (30 Treas. Dec., 330).

50 per cent ad valorem under the last provision of the same paragraph. Paragraph 356 is the "jewelry paragraph" of the tariff act of 1913.

The importers protested against the assessments, claiming assessment of the articles at the rate of 20 per cent ad valorem as manufactures of metal under paragraph 167 of the act. Various alternative claims were presented by the importers, which, however, are not pressed in their argument.

The protests were submitted upon evidence to the Board of General Appraisers, and were overruled. The board held that the compasses as well as the clasps should have been assessed at the rate of 60 per cent ad valorem under the paragraph in question; therefore the collector's action in assessing only 50 per cent ad valorem upon the compasses, while not reversed, was not approved by the board.

The importers appeal.

The following is a copy of the paragraph in question:

356. Jewelry, commonly or commercially so known, valued above 20 cents per dozen pieces, 60 per centum ad valorem; rope, curb, cable, and fancy patterns of chain not exceeding one-half inch in diameter, width, or thickness, valued above 30 cents per yard; and articles valued above 20 cents per dozen pieces designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, card cases, chains, cigar cases, cigar cutters, cigar holders, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military, and hair ornaments, pins, powder cases, stamp cases, vanity cases, and like articles; all the foregoing and parts thereof, finished or partly finished, composed of metal, whether or not enameled, washed, covered, or plated, including rolled gold plate, and whether or not set with precious or semiprecious stones, pearls, cameos, coral, or amber, or with imitation precious stones or imitation pearls, 60 per cent ad valorem. Stampings, galleries, mesh and other materials of metal, whether or not set with glass or paste, finished or partly finished, separate or in strips or sheets, suitable for use in the manufacture of any of the foregoing articles in this paragraph, 50 per centum ad valorem.

There seems to be no dispute about the character of the present articles, the sole question in the case relating to the interpretation of the jewelry paragraph just copied. The necklace clasps are composed of base metal set with imitation precious stones. They are intended to be attached to the ends of necklaces and serve as snaps or clasps for the same. They are conceded in the present argument to be entitled to the name of "parts of jewelry," and to be valued at more than 20 cents per dozen pieces. The compasses are small articles composed of metal and glass, metal being chief value. It is said without contradiction that they are used in the manufacture of watch charms. The exact value of the compasses is not stated in the record, but it was found by the board and is conceded by the parties that they are valued at less than 20 cents per dozen pieces. It is also conceded for the purposes of this case that they are entitled to be called "parts of jewelry."

Upon the foregoing facts we are of the opinion that both of the articles in question should have been assessed at 50 per cent ad valorem under the last provision of paragraph 356, *supra*, as "materials of metal, * * * finished or partly finished, * * * suitable for use in the manufacture" of certain of the articles theretofore enumerated in the pargraph. This conclusion rests upon the following premises:

As appears in the Congressional Record (63d Congress, vol. 50, pt. 2, p. 1081) the jewelry paragraph of the tariff revision of 1913 was reported to the House of Representatives by the Ways and Means Committee in the following terms, viz:

367. Jewelry, commonly or commercially so known, valued above 20 cents per dozen pieces; rope, curb, cable, and fancy patterns of chain not exceeding one-half inch in diameter, width, or thickness, valued above 30 cents per yard; and articles valued above 20 cents per dozen pieces designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, card cases, chains, cigar cases, cigar cutters, cigar holders, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military, and hair ornaments, pins, powder cases, stamp cases, vanity cases, and like articles; all the foregoing and parts thereof, finished or partly finished, composed of metal, whether or not enameled, washed, covered, or plated, including rolled gold plate, and whether or not set with precious or semiprecious stones, pearls, cameos, coral, or amber, or with imitation precious stones, 60 per centum ad valorem. Stampings, mesh, and other materials of metal, whether or not set with glass or paste, finished or partly finished, separate or in strips or sheets, suitable for use in the manufacture of any of the foregoing articles in this paragraph, 50 per centum ad valorem.

As appears from the same page of the Congressional Record above cited, the foregoing paragraph was amended in the House as follows:

Mr. PALMER. Mr. Chairman, I offer the following amendment.
The clerk read as follows:
Page 91, line 2, after the word "pieces" insert the words "60 per cent ad valorem."
The amendment was agreed to.
Mr. PALMER. Mr. Chairman, I offer the further amendment.
The clerk read as follows:
Page 91, line 17, after the word "stones" insert the words "or pearls."
The amendment was agreed to.
Mr. PALMER. Mr. Chairman, I offer the further amendment.
The clerk read as follows:
Page 91, line 18, after the word "stampings" insert the word "galleries."

It will be observed that the paragraph as thus introduced and amended was finally enacted as paragraph 356, *supra*, without any other alteration except the addition of the word "imitation" preceding the word "pearls" at the close of the 60 per cent classifications therein.

A reading of the paragraph as introduced by the committee immediately discloses the fact that the classification of "jewelry, commonly

or commercially so known, valued above 20 cents per dozen pieces," like the two classifications which followed it in the paragraph, was modified by the clause, " all the foregoing and parts thereof, finished or partly finished, composed of metal, whether or not enameled, washed, covered, or plated, including rolled gold plate, and whether or not set with precious or semiprecious stones; pearls, cameos, coral, or amber, or with imitation precious stones, 60 per centum ad valorem." It was this latter clause which prescribed the rate of duty for all of the articles named in the three several clauses which preceded it in the paragraph. By the terms of this clause the prescribed rate was made to apply to jewelry and also to " parts thereof, finished or partly finished," subject, however, to the limitation that they should be " composed of metal." These two important modifying phrases, one of extension and the other of restriction, plainly related to " jewelry, commonly or commercially so known," as well as to the other classes of articles named in the 60 per cent provisions of the paragraph, as the same was introduced by the committee.

However, when the paragraph was amended by the insertion of the words " 60 per centum ad valorem " immediately after the provision for " jewelry, commonly or commercially so known, valued above 20 cents per dozen pieces," the jewelry clause was thereby segregated from the succeeding clauses of the paragraph and converted into a complete and independent provision. Consequently the two modifying provisions just named no longer applied to it. No other interpretation than this would give due effect to the amendment in question. The amendment manifestly did not seek to change the rate of duty which was imposed upon jewelry by the paragraph as it first stood, for the same rate of duty, to wit, 60 per cent ad valorem, was prescribed by the amendment itself. The amendment must therefore have been intended to effect some change in the description of the articles upon which that rate of duty was imposed. This apparently was accomplished by withdrawing " jewelry, commonly or commercially so known, valued above 20 cents per dozen pieces," from its integral association with the three following clauses of the paragraph, and making the same dutiable under that description alone at the rate of 60 per cent ad valorem. Because of this amendment the terms of the fourth clause of the paragraph ceased to modify or affect the first clause, and the enumeration of " jewelry, commonly or commercially so known " was no longer enlarged by the phrase " parts thereof," nor limited by the proviso " composed of metal." Therefore, since the paragraph as thus amended laid no duty upon parts of jewelry as such, the collector's assessment of the necklace clasps under that name was unauthorized.

It is contended that the foregoing construction must be erroneous, because according to it there would be no provision in the jewelry

clause for parts of jewelry or for jewelry partly finished, such as appeared in the jewelry paragraphs of almost all of the preceding tariff revisions, and furthermore because' according to it' the clause " whether or not set with precious or semiprecious stones, pearls, cameos, coral, or amber, or with imitation. precious stones or imitation pearls," which is peculiarly applicable to the jewelry provision, would be withdrawn therefrom and be given exclusive reference to articles of personal convenience such as buckles, cardcases, chains cigar cases, etc.

This contention is certainly entitled to great consideration.   In the jewelry paragraph of the tariff act of 1909 provision was made for " all articles commonly or commercially known as jewelry, or parts thereof, finished or unfinished."   As has been stated, the present paragraph, according to our interpretation, omits the provision for " parts thereof, finished or unfinished."   But on the other hand, the former act did not in terms restrict the provision for jewelry to such articles only as were composed in chief value of metal, whereas the importers' contention would give that effect to the present paragraph.

This consideration, however, as well as the reference to the modifying clause " whether or not set with precious stones," etc., seems to be subordinate to the fact that the paragraph as first introduced in the House directly and unmistakably grouped the enumeration of " jewelry, commonly or commercially so known," with the other enumerations of the 60 per cent provisions, and modified all of them by the provision for " parts thereof," and the provision " composed of metal," and that thereupon the amendment was carried which either had the effect of segregating " jewelry, commonly or commercially so known," from the residue of the paragraph, or else had absolutely no effect at all.   The court should hardly adopt such a construction of the paragraph as would reduce the amendment in question to mere supererogation.

We therefore conclude that the clause beginning with the words " all the foregoing " was by force of the amendment limited in application to the two clauses which precede it in the paragraph.   These clauses are plainly not complete within themselves, for the rate of duty applicable thereto is not contained in either.   This omission necessarily implies that a supplementary clause must follow in order to complete them, and this office is fulfilled by the fourth clause. The first clause, however, as amended, is complete within itself, both as to enumeration and rate of duty, and stands as an independent provision without the aid of the fourth clause.

The Government in its brief adopts the view just expressed, but contends that the necklace clasps were dutiable nevertheless at the rate of 60 per cent ad valorem under the third clause of the same para-

graph, which levies that rate of duty upon "articles valued above 20 cents per dozen pieces designed to be worn on or about or attached to the person, such as and including * * * chains, * * * and like articles." This clause, as already stated, is concededly modified by the provision for "all the foregoing and parts thereof, finished or partly finished, composed of metal." We do not believe, however, that necklaces would in common speech be included within the name "chains," nor that they are articles "worn on apparel or carried on or about or attached to the person," *ejusdem generis* with the articles which are specified in the provision in question. The term "like articles" in the third clause of the paragraph could not have been intended to cover articles of jewelry as such.

On the other hand, it seems clear that the necklace clasps in question fall naturally within the last provision of the present paragraph. They are materials of metal, finished or partly finished, suitable for use in the manufacture of "jewelry, commonly or commercially so known, valued above 20 cents per dozen pieces." The question of value under the foregoing provision can not be raised in the case of the clasps since it is conceded that they are themselves valued at more than 20 cents per dozen pieces. It must follow that the necklaces to which they may be attached would likewise have that value.

In respect to the compasses it may be noted again that the collector assessed the same under the last provision of the present paragraph at the rate of 60 per cent ad valorem. It is contended by the importers that the assessment is erroneous since it does not appear from the record that they are suitable for use in the manufacture of jewelry or such other articles as are named in the paragraph, valued at more than 20 cents per dozen pieces. The importers contend that the compasses themselves are concededly valued at less than 20 cents per dozen pieces, and that the record does not disclose the value of the finished articles of which they may become a part. Therefore it is argued that they can not be classified as materials for the manufacture of articles valued at more than 20 cents per dozen pieces.

It must be remembered, however, that the provision in question covers such materials of metal as are "suitable" for the manufacture of jewelry or of certain other enumerated articles valued above 20 cents per dozen pieces. The compasses are conceded to be in chief value of metal, and the collector has held them to be suitable for use in the manufacture of certain articles which fall, both in character and value, within the preceding enumerations of the paragraph. The question of suitability is one of fact, with the presumption in favor of the collector's finding, and there is nothing in the record which tends to rebut that finding.

In accordance with the views above expressed we affirm the decision of the board in so far as it sustains the assessment of the compasses at 50 per cent ad valorem, but reverse the same in so far as it sustains the assessment of the necklace clasps at the rate of 60 per cent ad valorem. And we remand the case for reliquidation so that the clasps may be assessed at the rate of 50 per cent ad valorem, that being the correct assessment thereon, and being also within the importers' protest.

*Modified.*