KEER, MAURER COMPANY *v.* UNITED STATES (No. 4975)[1]

---

[1] C. A. D. 710.

United States Court of Customs and Patent Appeals, June 30, 1959

*Allerton deC. Tompkins* for appellant.

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (Daniel I. Auster, trial attorney, of counsel) for the United States.

Before WORLEY, Acting Chief Judge, RICH, MARTIN, and JOHNSON (retired), Associate Judges.

MARTIN, Judge, delivered the opinion of the court.

This is an appeal from the judgment of the Customs Court, Third Division, C.D. 2018, overruling appellant's protest and sustaining the collector's classification of certain merchandise described on the invoices as "rouleaux saphir." The Customs Court found the subject importation to be mineral substances composed of "synthetic materials of gem stone quality, such as corundum and spinel, and articles and wares composed wholly or in chief value of such materials," assessable at 30 per centum ad valorem under the provisions of paragraph 214 of the Tariff Act of 1930, and accordingly excepted from the applicable rate reduction established by GATT, T.D. 51802. The importer, while conceding that the goods in issue are mineral substances, claims that they are more specifically provided for in paragraph 367(d) of the Tariff Act of 1930.

The applicable statutory provisions are as follows:

PAR. 214. Earthy or mineral substances wholly or partly manufactured and articles, wares, and materials (crude or advanced in condition), composed wholly or in chief value of earthy or mineral substances, not specially provided for, whether susceptible of decoration or not, if not decorated in any manner, 30 per centum ad valorem; if decorated, 40 per centum ad valorem.

[The above paragraph was modified by the General Agreement on Tariffs and Trade, T.D. 51802, except as to "* * * synthetic materials of gem stone quality, such as corundum and spinel, and articles and wares composed wholly or in chief value of such materials * * *."]

PAR. 367.(a) Watch movements, and time-keeping, time-measuring, or time-indicating mechanisms, devices, and instruments, whether or not designed to be worn or carried on or about the person, all the foregoing, if less than one and seventy-seven one-hundredths inches wide, whether or not in cases, containers, or housings:

\* \* \*

(d) Jewels, suitable for use in any movement, mechanism, device, or instrument, dutiable under this paragraph or paragraph 368, or in any meter or compass, 10 per centum ad valorem.

\* \* \*

(i) For the purposes of this paragraph and paragraph 368 the term 'jewel' includes substitutes for jewels.

PAR. 368(a) Clocks, clock movements, including lever movements, clock-work mechanisms, time-keeping, time-measuring, or time-indicating mechanisms, devices, and instruments, synchronous and subsynchronous motors of less than one-fortieth of one horsepower valued at not more than $3 each, not including the value of gears or other attachments, and any mechanism, device, or instrument intended or suitable for measuring time, distance, speed, or fares, or the flowage of water, gas, or electricity, or similar uses, or for regulating, indicating, or controlling the speed of arbors, drums, disks, or similar uses, or for recording or indicating time, or for recording, indicating, or performing any operation or function at a predetermined time or times, all the above (except the articles enumerated or described in paragraph 367), whether or not in cases, containers, or housings:

\* \* \*

(g) Taximeters and parts thereof, finished or unfinished. \* \* \*.

The merchandise consists of cylindrical pieces of synthetic sapphire, imported in four different sizes with diameters ranging from .46 to 1.76 millimeters and lengths varying from 1.746 to 2.92 millimeters. The sole witness, a representative of the ultimate consignee, testified that his firm's chief use of the imported goods is in the manufacture of a stylus used for recording and replaying sound and in electrical measuring equipment. The witness testified that after arrival in this country the cylindrical pieces must be cut and polished to size for such applications with one or both ends of the jewels radiused to a specific diameter varying from one to three thousandths of an inch (.025 to .075 millimeter).

The witness pointed out that the imported pieces could be adapted for use in jewel bearings, while acknowledging that jewels would be

polished, sized, and radiused to "fit them for specific end uses." He further testified that:

> The type that I imported *can be* used for, [sic] for instance to create an impulse, to give a certain motion to an item or to a mechanism. They *can be* used as an end stone, *can be* used as a roller bearing. They *could be* used as a sapphire phonograph needle, *could be* used as a recording needle. They *might be* used as a point for a profilometer to determine surface roughness. (Emphasis added.)

When queried about suitable uses in mechanisms enumerated in paragraph 367 or 368, the witness replied:

> Well, they mention time-measuring, time-indicating, and certainly parts such as we are discussing here *could be* used for an application in a small motor.
>
> Q. Do you personally know of your own knowledge if any of these protested items before the court, these rouleaux saphir, are in condition as imported suitable for use in any of the mechanisms or devices specified in paragraph 367 or 368? Do you know that; 'yes' or 'no'? A. I would say they are.
>
> * * *
>
> Q. Do you know if they are suitable in their condition as imported for use in any of the mechanisms specified in paragraph 367 or 368? Do you know that of your own knowledge? A. They have the *qualifications-*
>
> * * *
>
> Because they are used in various *applications.* (Emphasis added.)

The Customs Court found, on the instant record, that

> * * * there is no evidence that jewels of the particular type involved herein are actually, practically, or commercially used in any of the devices mentioned in paragraphs 367 and 368, or in any meter or compass.

Appellant apparently urges that such finding is erroneous since "it contradicts the findings of the judge who observed the witness, and who was present at the hearing." To substantiate this claim the following statements made by Judge Lawrence of the Customs Court who presided at the hearing, but who did not participate in the decision below, are relied upon:

> Judge Lawrence: He [the witness] went further and testified that they were used, not only that they were suitable but that they were actually used for some of these purposes [in mechanisms specified in paragraphs 367 and 368]. Certainly actual use would answer suitability, would it not?
>
> Mr. Sklaroff [government counsel]: That may or may not be, sir.
>
> Judge Lawrence: Well, the court will have to prove [sic] that. But he is testifying to his own knowledge as to the actual use of the sapphire bearings for some of the purposes indicated in paragraphs 367(a) and 368(a). Is that right?
>
> The Witness: That's right.

Although Judge Lawrence indicated at the trial that the testimony of the witness on behalf of the importer might be susceptible of an interpretation which could be favorable to appellant, we do not believe that such statement of the trial judge precludes the judges of the division who decided the case from arriving at a different conclusion. Regardless of the demeanor of the witness, it is the total testi-

mony which is significant. The complete record was before the lower court which rendered the final judgment reviewed in *S. J. Charia & Co.* v. *United States*, 43 CCPA 147, C.A.D. 622, wherein this court said:

 * * * It seems clear to us that Congress contemplated that single judges on circuit should merely hear protest cases and that the divisions should hear and determine such cases.

In the *Bush* case, *supra*, [*Geo. S. Bush & Co., Inc., et al.* v. *United States*, 22 Cust. Ct. 158, C.D. 1175] the Customs Court correctly held that "Due process of law does not require that the judges or division of three judges which renders the judgment actually see and hear the witnesses testify and observe their demeanor" citing 16 C.J.S. Constitutional Law § 624, Note 40. "Due process of law does not forbid hearing of a cause on a transcript of evidence formerly heard in court * * *," *De La Rama* v. *De La Rama*, 241 U.S. 154.

There appears to be one issue which should be resolved in this case. Was the merchandise at bar, in its imported condition, "* * * suitable for use in any movement, mechanism, device or instrument dutiable under paragraph 367 or 368."?

 The words "suitable for use," as applied in the Customs law mean "actually, practically, and commercially fit" for such use. *Kahlen* v. *United States*, 2 Ct. Cust. Appls. 206, T.D. 31947; *United States* v. *Lorsch & Co.*, 8 Ct. Cust. Appls. 109, T.D. 37222; *United States* v. *Amerman & Patterson et al.*, 9 Ct. Cust. Appls. 244, T.D. 38205; *United States* v. *Geo. S. Bush & Co., Inc., et al.*, 26 CCPA 145, C.A.D. 8; *Coro, Inc.* v. *United States*, 41 CCPA 215, C.A.D. 554. Such suitability does not require that the merchandise be chiefly used for the stated purpose, *United States* v. *Lorsch & Co.*, supra, but it does require more than "* * * evidence of a casual, incidental, exceptional, or possible use. * * *" *Kahlen* v. *United States*, supra. There must be a substantial actual use, *Wah Shang Company* v. *United States*, 44 CCPA 155, C.A.D. 654.

As stated, the merchandise at bar was imported primarily for use as stylii for recording and replaying sound. This use obviously does not come within the purview of paragraphs 367 or 368. Furthermore, the testimony alleging the use of the merchandise in "electrical measuring equipment" is the only other positive assertion which indicates the purpose for which the merchandise was actually imported. Without further explanation this bare allegation cannot stand as the basis for concluding that the articles were suitable for use in devices enumerated in these paragraphs. Not all measuring equipment, whether mechanical or electrical, is classifiable under the provisions of paragraph 368. *United States* v. *United Geophysical Company*, 38 CCPA 137, C.A.D. 451; *United States* v. *C. H. Stoelting Co.*, 21 CCPA 588, T.D. 46995; and *United States* v. *Cambridge Instrument Co.*, 21 CCPA 508, T.D. 46970.

■ Coming now to the broad statements above quoted pertaining to suitable uses in mechanisms enumerated in paragraphs 367 and 368, we believe this testimony to be at most mere declarations of an essential ultimate fact in issue, without any corroborating evidence. Such declarations or conclusions are not sufficient to warrant a finding that the importations are suitable for use in the devices set forth in the above paragraphs, as contended by appellant. *Kahlen* v. *United States*, supra.

As our predecessor court has stated, "the question of suitability is one of fact, with the presumption in favor of the collector's finding * * *." *Mamluck & Co. et al.* v. *United States*, 6 Ct. Cust. Appls. 556, T.D. 36198. In the instant case, we find that the importer has failed to overcome that presumption.

For the above reasons we *affirm* the judgment of the lower court.