UNITED STATES v. GOLDBERG'S SONS et als. (No. 864).[1]

NECK-CHAIN CLASPS MADE OF BRASS.

A commercial designation may not be judicially known and none is here shown. It is, however, within judicial cognizance that a metal neck chain with a clasp constitutes jewelry. Paragraph 448, tariff act of 1909, relating to jewelry is, as to this importation, more specific in its application than paragraph 199, and the goods are dutiable accordingly under paragraph 448.—United States v. Guthman, Solomons & Co. (3 Ct. Cust. Appls., 276; T. D. 32572).

United States Court of Customs Appeals, May 17, 1912.

APPEAL from Board of United States General Appraisers, Abstract 27809 (T. D. 32297).

[Reversed.]

*William L. Wemple*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, on the brief), for the United States.
*Comstock & Washburn* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This appeal was briefed, argued, and submitted with the case of the United States v. Guthman, Solomons & Co., *supra* (T. D. 32572), decided this day. It involves a construction chiefly, though not entirely, of the same provisions of law. The importation consisted of neck-chain clasps made of brass and valued at less than 72 cents per gross. They were assessed with duty at 60 per cent ad valorem as jewelry under the last provision of paragraph 448 of the tariff act of 1909, and are claimed to be dutiable at 45 per cent ad valorem under paragraph 199 of said act, which provides for articles wholly or in part of metal whether partly or wholly manufactured. The board sustained the claim of the importers, protestants. The Government is appellant.

The provisions of paragraph 448 are pertinent, to wit, the second provision thereof, which reads as follows:

All stampings and materials of metal (except iron or steel), or of metal set with glass or paste, finished or partly finished, suitable for use in the manufacture of any of the foregoing articles (except chain valued at less than thirty cents per yard other than nickel or nickel-plated chain), valued at seventy-two cents per gross, three cents per dozen pieces and in addition thereto one-half of one cent per gross for each one cent the value exceeds seventy-two cents per gross.

And the last provision thereof under which the goods were classified for dutiable purposes by the collector, which, quoted, is:

All articles commonly or commercially known as jewelry, or parts thereof, finished or unfinished, including chain, mesh, and mesh bags and purses composed of gold or platinum, whether set or not set with diamonds, pearls, cameos, coral, or other precious or semiprecious stones, or imitations thereof, sixty per centum ad valorem.

Inasmuch, however, as the goods were returned as valued at less than 72 cents per gross by the collector and were so found by the

---

board, and were so conceded by both parties to the record, they are by that finding put beyond the express terms of the second provision of paragraph 448, *supra.*

The issue, then, is whether the goods are properly dutiable as "articles * * * wholly or in part of * * * metal, and whether partly or wholly manufactured," under paragraph 199, or as "articles commonly or commercially known as jewelry, or parts thereof, finished or unfinished," under the last provision of paragraph 448.

The case was submitted without testimony. The merchandise was classified as jewelry by the appraiser and so returned by the collector. While the Board of General Appraisers made no express findings that the articles were or were not jewelry or parts thereof, the board excluded them from the jewelry provision upon the ground that they were not jewelry composed of gold or platinum, which implies that the merchandise is, however, a class of jewelry or parts thereof. The Government, appellant here, concedes the articles to be parts of jewelry. In the Government's brief it is stated:

This appeal concerns only parts of jewelry.

The importers' contention is that they are articles either commonly or commercially known as jewelry.

There being no finding in the record by either the collector or the Board of General Appraisers that the articles are either wholly or parts of merchandise commercially known as jewelry, and there being no evidence in the record upon that subject, that finding can not be assumed as within the record.

The commercial designation of an article can be established solely by evidence and is not the subject of judicial knowledge.

In Tyng *v.* Grinnell (92 U. S., 467, 470) the Supreme Court defined this rule and expressed reasons supporting the same in the following language:

Tariff laws are passed to raise revenue; and for that purpose substances are classed according to the general usage and known denominations of trade. Whether a particular article is designated by one name or another in the country of its origin, or whether it is a simple or mixed substance, is a matter of very little importance in the adjustment of our revenue laws, as those who frame such laws are chiefly governed by the appellations which the articles bear in our own markets and in our domestic and foreign trade. United States *v.* Smith (9 Wheat., 438).

Laws regulating the payment of duties are for practical application to commercial operations and are to be understood in a commercial sense; and this court 60 years ago decided that Congress intended that they should be so administered and understood. United States *v.* Goodale (8 Pet., 279). Such laws, say this court, are intended for practical use and application by men engaged in commerce; and hence it has become a settled rule, in the interpretation of statutes of the description, to construe the language adopted by the legislature, and particularly in the denomination of articles, according to the commercial understanding of the terms used. Elliott *v.* Swartwout (10 Pet., 151).

Congress must be understood, says Taney, C. J., as describing the article upon which the duty is imposed according to the commercial understanding of the terms used

in the law, in our own markets; and the court held in that case that Congress in imposing the duty must be considered as describing the article according to the commercial understanding of the terms used in the act of Congress when the law was passed imposing the duty. Curtis v. Martin (3 How., 109).

Suffice it to say, without multiplying authorities, that the rule of law is settled that the question whether an imported article is or is not known in commerce by the word or terms used in the act imposing the duty is a question of fact for the jury and not a question of construction; and of course it must, in a case like the present, be determined by the court as a question of fact, the issues of fact as well as of law being submitted to the court. Lawrence v. Allen (7 How., 797).

A more concise statement of the rule is found in the later case of Seeberger v. Schlesinger (152 U. S., 581, 585). The language of the court there is as follows:

The commercial designation of an article, however, is not a matter of which courts can take judicial notice, but is a fact to be proved like any other—by evidence. In this case there is no finding as to the commercial meaning of the word "furs," and no testimony whatever upon the subject, for clearly neither the opinion in the *Astor case* nor the extract from the encyclopedia can be considered as legitimate testimony.

In the ascertainment of what is or is not commonly designated as within a provision of a tariff law, that ascertainment can be had through the exercise of judicial knowledge, testimony introduced, or resort to standard works which are deemed to speak in the language of common understanding.

In Robertson v. Salomon (130 U. S., 412, 414, 415) the question was whether or not beans were vegetables within the tariff statute. The Supreme Court said:

Beyond the common knowledge which we have on this subject, very little evidence is necessary or can be produced. But on the trial the parties deemed it important to introduce a great deal of testimony. The court, however, did not allow the defendant to prove the common designation of beans as an article of food. * * * The common designation as used in everyday life * * * would have been very proper to be shown in the absence of further light from commercial usage. We think that the evidence on this point ought to have been admitted. In addition to this, the court told the jury that "the commercial designation of the article, or what the article is called in trade and commerce, or the name bean, has nothing to do with the question." We think the court erred in this instruction. The commercial designation, as we have frequently decided, is the first and most important designation to be ascertained in settling the meaning and application of the tariff laws. See Arthur v. Lahey (96 U. S., 112, 118), Barber v. Schell (107 U. S., 617), Worthington v. Abbott (124 U. S., 434, 436), Arthur's Executors v. Butterfield (123 U. S., 70, 75). But if the commercial designation fails to give an article its proper place in the classifications of the law, then resort must necessarily be had to the common designation. We think, therefore, that the court erred both in its charge and in the exclusion of the evidence offered. * * *

In Nix v. Hedden (149 U. S., 304, 306, 307) the Supreme Court again considered the subject, making use of the following statements:

There being no evidence that the words * * * have acquired any special meaning in trade or commerce, they must receive their ordinary meaning. Of that meaning the court is bound to take judicial notice, as it does in regard to all words in our tongue; and upon such a question dictionaries are admitted, not as evidence, but only as aids

to the memory and understanding of the court.  Brown *v.* Piper (91 U. S., 37, 42), Jones *v.* United States (137 U. S., 202, 216), Nelson *v.* Cushing (2 Cush., 519, 532, 533), Page *v.* Fawcet (1 Leon., 242), Taylor on Evidence (8th ed.), secs. 16, 21. * * * Beyond the common knowledge which we have on this subject, very little evidence is necessary or can be produced.  Robertson *v.* Salomon (130 U. S., 412, 414).

Later, in Sonn *v.* Magone (159 U. S., 417, 421), the rule is succinctly stated as follows:

The interpretation of words of common speech is within the judicial knowledge and matter of law.  Marvel *v.* Merritt (116 U. S., 11), Nix *v.* Hedden (149 U. S., 304), Cadwalader *v.* Zeh (151 U. S., 171), Saltonstall *v.* Wiebusch (156 U. S., 601).

That a metal neck chain is jewelry and that a clasp therefor is a part thereof was assumed in the classification by the collector and by the Board of General Appraisers in its decision.  It is well within common knowledge and judicial cognizance that such is true and that the finding is without question.

The last provision to paragraph 448 provides for articles "commonly" known as jewelry.  This finding, therefore, brings the imported merchandise precisely within the terms of the paragraph.

If there is any distinction between that which is jewelry in fact, by description of the processes of making the same, or the scientific, or any special understanding, the denominative designation "commonly * * * known as jewelry" is not necessarily coextensive therewith.  What may, in fact, be jewelry descriptively or scientifically and what the public may understand to be jewelry may, and ofttimes probably are, different.

The two tariff designations "commonly" and "commercially" are manifestly aimed to include, first, that which is commercially known as jewelry; that is to say, that which the wholesale jewelry trade of this country generally and uniformly throughout the country in the wholesale trade thereof regards and classifies as jewelry; and, secondly, that which is commonly known as jewelry; that is to say, that which the general public in its everyday understanding and converse regards and classifies as jewelry.  The provision extends the scope of the paragraph to everything which the commercial and popular understanding denominates and classifies as jewelry.

The one paragraph, 199, extends to all articles made wholly or in chief value of metal not specially provided for, while the other, 448, extends only to those articles wholly or in part of metal "known as jewelry."  The latter is the more specific.

It is therefore more specific, whether the goods be commonly or commercially known as jewelry, than the descriptive terms of paragraph 199.  United States *v.* Hatters' Fur Exchange (1 Ct. Cust. Appls., 198; T. D. 31327).

It follows that the merchandise is properly dutiable as parts of articles commonly known as jewelry, as assessed by the collector.  The decision of the Board of General Appraisers is *reversed.*