LORSCH & Co. *et al. v.* UNITED STATES (No. 1208).[1]

IMITATION PEARL BEADS.

The testimony here is convincing that in trade and commerce, as well as in common speech, the articles of the importation are, while often called imitation pearls, equally well known as imitation pearl beads. They come accordingly within the precise terms of paragraph 421, tariff act of 1909.

United States Court of Customs Appeals, January 22, 1914.

APPEAL from Board of United States General Appraisers, G. A. 7473 (T. D. 33587).

[Affirmed.]

*Comstock & Washburn* (*George J. Puckhafer* on the brief) for appellants.

*William L. Wemple,* Assistant Attorney General (*Leland N. Wood,* special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The merchandise involved in this case was returned by the appraiser as imitation pearl beads and dutiable under paragraph 421. They were so assessed by the collector. Importers' brief refers to the importation as imitation pearls in the *form* of beads, but states that the predominating and practically exclusive use of those here involved is the manufacture of jewelry, and claims that they are therefore dutiable under the concluding provisions of paragraph 449.

The material parts of the two paragraphs in controversy we quote:

421. Beads and spangles of all kinds, including imitation pearl beads, not threaded or strung, or strung loosely on thread for facility in transportation only, thirty-five per centum ad valorem; * * *.

449. * * * Imitation precious stones, including pearls and parts thereof, for use in the manufacture of jewelry, doublets, artificial, or so-called synthetic or reconstructed pearls and parts thereof, rubies, or other precious stones, twenty per centum ad valorem.

If it can be said that either paragraph equally applies to the importation that imposing the higher rate of duty would prevail. See United States *v.* Morrison (179 U. S., 456, at 463). It is not necessary, however, to rest the case on this rule of questionable equity, for it appears that imitation pearls, to be used in the manufacture of

---

[1] Reported in T. D. 34132 (26 Treas. Dec., 154).

jewelry, exist not in the form of beads, and are in common use. This being so, the provision for imitation pearl beads is more specific than the more general term of imitation pearls, and should prevail, in the absence of evidence showing a more restricted commercial designation. The history of the bead paragraph is given in United States *v.* Morrison, *supra,* and the conclusion was stated as follows:

From this review it is evident that in prior tariff acts beads were classified separately from imitations of precious stones, and were regarded as distinct from them and dutiable at a much higher rate. Can it be said that the act of 1890 suddenly changed a purpose so constant throughout previous legislation and did not express the change, but left it to be inferred from indefinite and ambiguous provisions—provisions which had not had that effect nor were intended to have that effect? We think not.

If it be said they were only precluded from that effect by the specific provisions for beads and that such provisions are not in the act of 1890, the answer is twofold: (1) That there is provision which applies to and embraces them. They are undoubtedly "glass and manufactures of glass," and the adequacy of that description, which is the description of paragraph 108, to include them can not be denied. An imitation of a precious stone may be a manufacture of glass, but the latter is not necessarily an imitation of a precious stone, or, more narrowly, an imitation of a precious stone within the meaning of a tariff statute. Every resemblance would not make such imitation, and the suggestion of the counsel for the United States is not without its weight—that the capability and purpose of setting must be considered. The condition seems to have been contemplated by the statute, and in the testimony for the importers there was an attempt to satisfy it. Witnesses testified that while the articles were beads they could be set and sometimes were set. Undoubtedly they could be fixed in metal, and so arranged as to conceal their perforations.   *   *   *

(2) If the act of 1890 did not as specifically provide for beads as prior acts, glass beads as such were in the legislative mind and their various conditions contemplated. It was impossible to have in contemplation glass beads, loose, unthreaded, and unstrung and not have the exact opposite in contemplation—beads not loose, beads threaded and strung, and made provision for them. What provision? Were they to be dutiable at the same or at a higher rate than beads unthreaded or unstrung? If at the same rate—if all beads were to be dutiable at the same rate—why have qualified any of them? Were some to be dutiable at one rate and some at another rate? If made of plain glass, were they to be dutiable at 60 per cent under paragraph 108; if tinted or made to the color of some precious stone, were they to be dutiable at 10 per cent under paragraph 454? No reason is assigned for such discrimination, and we are not disposed to infer it. It is a more reasonable inference that beads threaded of all kinds were intended to be dutiable at a higher rate than beads unthreaded, and if there can be a choice of provisions that intention must determine.

Under the present state of the law, imitation pearl beads being provided for *eo nomine,* the case is made much stronger for the Government. Importers' counsel apparently recognized this and undertook to overcome the presumption of the correctness of the appraiser's classification by offering evidence tending to show that the article here in question was, prior to the act of 1909, known commercially as imitation pearls, whose use was the manufacture of jewelry, to the exclusion of any commercial classification of the articles as pearl beads. This presented the question of fact. The board found the fact against the contention of the importers, and this finding is entitled to some weight. Importers, however, contends that as the general

appraiser who wrote the opinion was not present when the testimony was taken the weight to be attached to the finding is thereby lessened. Conceding this to be in a measure true, yet as it appears that the testimony was taken before General Appraiser McClelland, who concurred in the opinion, we, in such circumstances, attach to the finding considerable weight, and in a doubtful case would give it controlling effect.

We need not, however, rest this case upon the presumption of correctness attached to the finding of the board. We have gone into the record and made a careful independent examination of .the testimony, which examination leads us irresistibly to the same conclusion as that reached by the board. Without attempting a review of the testimony at length, it must suffice to say that the testimony, taken as a whole, is convincing that in trade and commerce, as well as in common speech, the articles here in question, while often spoken of as imitation pearls, are equally well known as imitation pearl beads. They therefore fall within the precise terms of paragraph 421 as held by the board, and the decision is *affirmed.*