AMERICAN BEAD CO. *v.* UNITED STATES (No. 1601).[1]

1 CONSTRUCTION—PARAGRAPH 356, TARIFF ACT OF 1913.
   The words "composed of metal," in the fourth clause of paragraph 356, tariff act of 1913, do not modify "jewelry" in the first.—Mamluck & Co. *et al. v.* United States (6 Ct Cust. Appls., 556; T. D. 36198).

2. COMMERCIAL DESIGNATION—MEANING OF WORDS—PRESUMPTION
   Commercial designation is a matter of fact, not within the judicial knowledge, and the collector's finding is presumptively correct. The interpretation of words of common speech, however, seems to be a matter of law and within the judicial knowledge.

3. LEGISLATIVE HISTORY—JEWELRY—BEADS AND ARTICLES MADE OF BEADS.
   The language of successive tariff acts shows that Congress has regarded beads and articles made of beads as separate tariff entities from jewelry.

4. ARTICLES OF PERSONAL ADORNMENT ONLY—JEWELRY.
   Jewelry may be useful as well as ornamental, and all articles of personal adornment are not jewelry.

5. ADMINISTRATIVE PRACTICE AS TO BEADS AND BEADED ARTICLES.
   The practice of the Treasury Department has been, until recently, to classify beads and beaded articles separately from jewelry.

---

1 Reported in T. D. 36259 (30 Treas. Dec., 471).

6. IMITATION JET—JEWELRY.

Congress has regarded imitation jet articles as separate from jewelry.—United States *v.* Beierle (1 Ct. Cust. Appls., 457; T. D. 31506).

7. IMITATIONS OF PRECOIUS STONES AND PRECIOUS METALS.

Necklaces and chains in imitation of precious stones and precious metals are commonly characteristic of jewelry.

8. CONSTRUCTION—PARAGRAPH 333, TARIFF ACT OF 1913.

Paragraph 333, tariff act of 1913, is exhaustive as to its subject matter—beads and spangles and articles made wholly or in chief value of them. It can be invaded only by some other clearly and more specifically expressed intention of Congress.

9. JEWELRY.

Jewelry is commonly composed of the precious metals or imitations thereof, or of precious or semiprecious stones, pearls, or imitations thereof, or cameos, coral, or amber, including artificial, synthetic, or reconstructed pearls, rubies, or other precious stones, strung or set.

10. COMMERCIAL DESIGNATION—COMMON UNDERSTANDING.

The caprice of fashion or the advantages of trade may vary commercial designations, while common acceptance may remain the same.

11. AMBER—JEWELRY.

Inasmuch as Congress, in paragraph 357, tariff act of 1913, has not classed amber as a precious or semiprecious stone or material for use in the manufacture of jewelry, and in paragraph 356 has expressly avoided its enumeration among the imitations of settings rated at 60 per cent, the purpose seems obvious not to have so rated for duty imitations of amber.

12. BEADED NECKLACES WITHOUT REAL OR IMITATION PRECIOUS METALS OR REAL OR IMITATION PRECIOUS OR SEMIPRECIOUS STONES, HOW DUTIABLE.

Necklaces, with or without base metal clasps, in chief value of beads, the beads being made of wood, gelatin, or paste, and china or colored glass, some in imitation of jet and amber, are dutiable as articles in chief value of beads under paragraph 333, tariff act of 1913, and not as jewelry under paragraph 356.

## United States Court of Customs Appeals, March 9, 1916.

APPEAL from Board of United States General Appraisers, G. A. 7754 (T. D. 35591).

[Reversed.]

*Allan R. Brown* for appellants.

*Bert Hanson,* Assistant Attorney General (*Charles D. Lawrence,* special attorney, of counsel), for the United States.

[Oral argument Dec. 9, 1915, by Mr. Brown and Mr. Lawrence.]

Before SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This appeal concerns beaded chains or necklaces, some with and others without metal clasps. When present the clasps are of base metal, large, crude, colored and of the kind customarily used for carrying fans, bags, or similar articles. The beads are of various materials other than metal. Some are of wood, others gelatin or paste, china or colored glass. They do not, save one sample in an insignificant degree, imitate any of the precious or semiprecious stones. Including and comprising the great bulk are necklaces in imitation of jet. They are all intended to be worn on or about the

person as ornaments. To some are attached, pendants or tassels They are all wholly or in chief value of beads, and may be properly termed "beaded articles." Duty was assessed thereon as articles commonly known as jewelry under paragraph 356 of the tariff act of 1913. On protest the Board of General Appraisers affirmed this assessment.

The importers appeal from this decision, asserting as their chief claim that the articles are properly dutiable as "articles composed in chief value of beads" under paragraph 333 of the act.

The several instructive and pertinent paragraphs in order are as follows:

333. Beads and spangles of all kinds, including imitation pearl beads, not threaded or strung, or strung loosely on thread for facility in transportation only, thirty-five per centum ad valorem; curtains, and other articles not embroidered nor appliquéd and not specially provided for in this section, composed wholly or in chief value of beads or spangles made of glass or paste, gelatin, metal, or other material, fifty per centum ad valorem.

356. Jewelry, commonly or commercially so known, valued above 20 cents per dozen pieces, sixty per centum ad valorem; rope, curb, cable, and fancy patterns of chain not exceeding one-half inch in diameter, width, or thickness, valued above 30 cents per yard; and articles valued above 20 cents per dozen pieces designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, cardcases, chains, cigar cases, cigar cutters, cigar holders, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military, and hair ornaments, pins, powder cases, stamp cases, vanity cases, and like articles; all the foregoing and parts thereof, finished or partly finished, composed of metal, whether or not enameled, washed, covered, or plated, including rolled gold plate, and whether or not set with precious or semiprecious stones, pearls, cameos, coral, or amber, or with imitation precious stones or imitation pearls, sixty per centum ad valorem. Stampings, galleries, mesh and other materials of metal, whether or not set with glass or paste, finished or partly finished, separate or in strips or sheets, suitable for use in the manufacture of any of the foregoing articles in this paragraph, fifty per centum ad valorem.

357. Diamonds and other precious stones, rough or uncut, and not advanced in condition or value from their natural state by cleaving, splitting, cutting, or other process, whether in their natural form or broken, and bort; any of the foregoing not set, and diamond dust, ten per centum ad valorem; pearls and parts thereof, drilled or undrilled, but not set or strung; diamonds, coral, rubies, cameos, and other precious stones and semiprecious stones, cut but not set, and suitable for use in the manufacture of jewelry, twenty per centum ad valorem; imitation precious stones, including pearls and parts thereof, for use in the manufacture of jewelry, doublets, artificial, or so-called synthetic or reconstructed pearls and parts thereof, rubies, or other precious stones, twenty per centum ad valorem.

In this court the appellants contend—

(1) That these articles are excluded from paragraph 356 in that the phrase therein "all the foregoing * * * composed of metal" modifies all the preceding language of the paragraph; wherefore these articles being admittedly not "composed of metal" are excluded therefrom. The court having decided that question ad-

versely to the appellants, it is not in this case. Mamluck & Co. *et al. v.* United States (6 Ct. Cust. Appls., 556; T. D. 36198).

The appellants further claim, however, (2) that beaded necklaces, such as these, are not commonly known as jewelry; and, (3) that in this act and for many years past Congress in tariff legislation has treated beads and beaded articles as separate and distinct tariff subjects from "jewelry." Wherefore it is claimed that they are not deemed by Congress and should not be held to be "jewelry" within the act. Appellants also assert that that has been the course of administration and decision.

On the other hand, the Government assumes (1) that such articles were, by the collector and the board, found to be commonly known as jewelry, which finding appellants did not impeach by testimony; and, (2) that no such uniform course of decision has been established; and, (3) that common knowledge and understanding classes these articles as jewelry.

The rule of decision that appellate courts will not within certain limitations disturb the findings of fact by the lower tribunal is too familiar to warrant argument or citation. The determination of the common meaning or scope of words of the English language, however, is not always regarded or expressed as a finding of fact, but a matter of judicial knowledge *"and a matter of law."* The rule was tersely stated by Mr. Chief Justice Fuller in considering a provision of the tariff act of 1883, in Sonn *v.* Magono (159 U. S., 417–421), as follows:

The words "seeds" and "vegetables" are words of common speech, and there is no room here for the contention that they had acquired a special signification by usage or had a scientific, different from the popular, meaning. Whether the articles were properly classified as vegetables was a matter for the court to decide. The interpretation of words of common speech is within the judicial knowledge and matter of law. Marvel *v.* Merritt (116 U. S., 11); Nix *v.* Hedden (149 U. S., 304); Cadwalader *v.* Zeh (151 U. S., 171); Saltonstall *v.* Wiebusch (156 U. S., 601).

Mr. Justice Gray amplified the rule in Nix *v.* Hedden (149 U. S., 304–307), stating:

There being no evidence that the words "fruit" and "vegetables" have acquired any special meaning in trade or commerce, they must receive their ordinary meaning. Of that meaning the court is bound to take judicial notice, as it does in regard to all words in our own tongue; and upon such a question dictionaries are admitted, not as evidence, but only as aids to the memory and understanding of the court. Brown *v.* Piper (91 U. S., 37, 42); Jones *v.* United States (137 U. S., 202, 216); Nelson *v.* Cushing (2 Cush., 519, 532, 533); Page *v.* Fawcet (1 Leon., 242); Taylor on Evidence (8th ed., secs. 16, 21).

Of course, the trial court may take or consider evidence in aid of this ascertainment as well as examine dictionary definitions. Such have been held admissible by the Supreme Court for that purpose, but only as aids to the court and not as establishing or controverting an issuable fact. Robertson *v.* Salomon (130 U. S., 412–415). Com-

mercial designation, of course, is such an issuable fact and can be established or found only upon evidence. Robertson *v.* Salomon, *supra;* Arthur *v.* Lahey (96 U. S., 112–118); Barber *v.* Schell (107 U. S., 617–623); Worthington *v.* Abbott (124 U. S., 434–436); Arthur's Executors *v.* Butterfield (125 U. S., 70–75). In United States *v.* Goldberg's Sons *et als.* (3 Ct. Cust. Appls., 282; T. D. 32573), this court reviewed these cases and adopted and applied that doctrine with reference to the provision "commonly  *  *  *  known as jewelry."

Whether, however, the determination of the common understanding or scope of a word shall be treated and expressed as a question of law or as a finding of fact, which former seems to have been the course in many cases, notably, among many so holding, United States *v.* Schiff & Co. (Circuit Court of Appeals, Second Circuit, 139 Fed., 549); Wolff *v.* United States (2 Ct. Cust. Appls., 11; T. D. 31572); United States *v.* International Forwarding Co. (6 Ct. Cust. Appls., 25; T. D. 35272), in the last analysis the result is the same, for in either case the court of final resort must approach the issue as one of original determination.

In this case no testimony was introduced on this point before the board save the report of the local appraiser that the articles were "*commonly* known as jewelry." In reaching a conclusion the board evidently did not rely upon this *opinion of the appraiser upon a question of law not within his legal functions*, but, aided by lexicographic authority, exercised judicial knowledge. The opinion states:

In the case at bar there is much more than the presumption arising from the action of the Government officer. There are the facts that the merchandise is necklaces and that it is an article of personal adornment worn around the neck. In view of these facts and the fact that the classifying officer has classified it as jewelry commonly or commercially so known, to approve the contentio₁ of the protestant we not only must set aside this presumption but we must set aside the conclusion arising from the facts. This, of course, we can not do.

\*          \*          \*          \*          \*          \*          \*

Applying that rule to the facts in the case at bar, it is uncontradicted that the merchandise is necklaces *worn as a matter of adornment.*

If we were to apply our judgment, without reading the evidence in the case, as to the ordinary meaning of the term "jewelry" it would be that these articles were properly classified.

\*          \*          \*          \*          \*          \*          \*

The protestant further insists in his brief that under the cases of American Bead Co. *v.* United States (3 Ct. Cust. Appls., 509; T. D. 33166) and United States *v.* Beierle (1 Ct. Cust. Appls., 457; T. D. 31506), a portion of this merchandise, being composed of beads in imitation of jet, could not be jewelry, and that the courts have held that imitation jet articles are not jewelry. We need not disagree with either of the authorities, but rely upon the established fact that this merchandise, whether of jet, of wood, or of metal, is in fact necklaces to be worn about the person for purposes of adornment, and thereby becomes jewelry. It could not be classified otherwise, even if the record were more silent than it is, and the fact was to be established merely by an examination of the exhibits without any testimony as to their use.

The Standard Dictionary, Twentieth Century Edition, among the definitions of "jewelry," has the following:

The word "jewelry," in its generally accepted and modern sense, is understood to mean ornaments worn for personal adornment only.

These necklaces are "ornaments worn for personal adornment only." We, therefore, can not come to any other conclusion than that the merchandise is jewelry, and within the first clause of paragraph 356.

There is not a scintilla of evidence in the record to support the alternative finding or assumption of fact by the board that the articles are "commercially known" as jewelry. Its conclusion, therefore, that they are commonly so known presents here an issue of law.

The decisive principle obviously adopted by the board is that *all* "ornaments worn for personal adornment only" are jewelry. This court in United States *v.* International Forwarding Co., *supra,* considered the contention based on the above lexicographic authority, which is exceptional among dictionaries, that jewelry can be used for "personal adornment *only*" and not utility and declined to so hold. See also United States *v.* American Express Co. (6 Ct. Cust. Appls., 97; T. D. 35341); United States *v.* Altman & Co. *et al.* (6 Ct. Cust. Appls., 131; T. D. 35390). Equally the court must decline to hold that *all* articles of personal adornment are jewelry; or, more pertinently, that all necklaces being articles of personal adornment are jewelry.

Refutation is had by advertence to the Standard Dictionary, Twentieth Century Edition:

*Necklace.*—1. An ornament worn round the neck, of beads, *shells, seeds,* precious stones, or precious metal.

Certainly no one will assert that a necklace of shells or seeds is jewelry.

The view expressed by the United States District Court for Hawaii in United States *v.* Hawaii & South Seas Curio Co. (T. D. 26778) seems to us to more nearly accord with the common understanding in stating:

The counsel for the petitioner refers considerably to the word "necklace" and to the incontestable conclusion that these strung shells are necklaces. From this he appears to draw a very strong implication that, being necklaces, they must be jewelry. I admit that shells so prepared and used for wearing around the neck, as these undoubtedly are, are necklaces, but "necklaces" also include strings of coins, beads, or flowers, according to the Century Dictionary, which describes a necklace as a flexible ornament worn around the neck, which description would also include the strings of seeds of various kinds so extensively prepared in these islands and often worn about the neck. I do not consider that a necklace of flowers or a necklace of seeds unmounted in metal, but merely strung, could be reasonably classified as jewelry.

Has the legislative course of Congress assigned "beads" and "articles made from beads" a different and distinct tariff classification from "jewelry"? Apparently from a period long antedating

the requirements of the rule of legislative adoption such has been the course. Of earlier tariff acts the Supreme Court, in United States *v.* Morrison (179 U. S., 456–459), in considering the dutiable classification of certain beads, strung, said:

As early as 1858 the Treasury Department decided that genuine pearls, when imported strung on a thread to be used as beads for necklaces without further manufacture, were dutiable as beads. And later jet and coral necklaces were classed as beads and bead ornaments.

The court in that case reviews the various contemporaneous provisions for beads and bead ornaments, precious stones, imitations thereof, and jewelry down to the tariff act of 1890, and states:

From this review it is evident that in prior tariff acts (to that of 1890) beads were classified separately from imitations of precious stones and were regarded as distinct from them * * *.

Notwithstanding the provision in that act for "jewelry" (par. 452) the Supreme Court held these beads *strung* dutiable as manufactures of glass, there being no provision in the act for articles composed of beads. While the precise issue as to jewelry was not made in the case, absence of its suggestion affords much light upon the customs practice of that day.

That Congress, excepting the act of 1890, providing and construed as stated, regarded bead ornaments and jewelry, both as commonly and commercially so known, as separate tariff entities is clearly shown by the pertinent contrasted provisions of the several acts.

Revised Statutes, 1873–1874:

All beads and bead ornaments, except amber, fifty per centum ad valorem.

Precious stones and jewelry.—Diamonds, * * * and other precious stones, when not set: * * * when set in gold, silver, or other metal, or in imitations thereof, and *all other jewelry*, twenty-five per centum ad valorem; * * *.

Act of 1883:

Beads, and bead ornaments of all kinds, except amber, fifty per centum ad valorem.

Jewelry of all kinds, twenty-five per centum ad valorem.

Act of 1890:

445. Glass beads, loose, unthreaded or unstrung, ten per centum ad valorem.

452. Jewelry: All articles, not elsewhere specially provided for in this act, composed of precious metals or imitations thereof, whether set with coral, jet, or pearls, or with diamonds, rubies, cameos, or other precious stones, *or imitations thereof, or otherwise*, and which shall be known commercially as "jewelry," and cameos in frames, fifty per centum ad valorem.

Act of 1894:

354. * * * Manufactures known commercially as bead, beaded or jet trimmings or ornaments, thirty-five per centum ad valorem.

336. Jewelry: All articles not specially provided for in this act, commercially known as "jewelry," and cameos in frames, thirty-five per centum ad valorem.

Act of 1897:

408. Beads of all kinds, not threaded or strung, thirty-five per centum ad valorem; fabrics, nets or nettings, laces, embroideries, galloons, wearing apparel, ornaments, trimmings and other articles not specially provided for in this act, composed wholly

or in part of beads or spangles made of glass or paste, gelatin, metal, or other material, but not composed in part of wool, sixty per centum ad valorem.

434. Articles *commonly* known as jewelry, and parts thereof, finished or unfinished, not specially provided for in this act, including precious stones set, pearls set or strung, and cameos in frames, sixty per centum ad valorem.

Act of 1909:

421. Beads and spangles of all kinds, including imitation pearl beads, not threaded or strung, or strung loosely on thread for facility in transportation only, thirty-five per centum ad valorem; fabrics, nets or nettings, laces, embroideries, galloons, wearing apparel, ornaments, trimmings, curtains, fringes, and other articles not specially provided for in this section, composed wholly or in chief value of beads or spangles made of glass or paste, gelatin, metal, or other material, but not in part of wool, sixty per centum ad valorem * * *.

448. * * * All articles commonly or commercially known as jewelry or parts thereof, finished or unfinished, including chain, mesh, and mesh bags and purses composed of gold or platinum, whether set or not set with diamonds, pearls, cameos, coral, or other precious or semiprecious stones, or imitations thereof, sixty per centum ad valorem.

The noticeable fact that the acts of 1894, 1897, and 1909 repeatedly and uniformly prescribed by separate paragraphs the same rate of duty upon both these tariff subjects is certainly persuasive that they were regarded and classified by Congress as different in a tariff sense. The legal rule against tautological legislation leaves no other conclusion open to the court.

Briefs of counsel abound in citations claiming contrary decisions as to the classification of beaded chains and necklaces under these statutes. We have examined all these cases with care. While there may be some conflict, we think it will be found on close examination, with reference to the particular record and statutes in each case, that this conflict is more apparent than real. The earlier board cases seem controlled more by the character of the necklace as of metal and imitation precious stones or semiprecious stones in *imitation of jewelry*, holding such commercially known as jewelry or imitation jewelry. The similarity of the rates of duty in the competing paragraphs of the acts of 1894, 1897, and 1909 rendered decision as to whether the articles were one or the other unnecessary, even though Congress had with precise care marked and preserved the statutory difference. Nevertheless, the important thing now is, Did *Congress* by letter of the statute make the distinction? We are impressed that the great preponderance of authority observed it. Certainly administrative officers did, for the unimpeached testimony of the official examiner who served at New York for 14 years, under the acts of 1897 and 1909, was that he thereunder continuously returned goods represented by these samples as "beaded articles." (Record, p. 11.) Indeed, the order of the Treasury Department (T. D. 34511) recites that practice as follows·

As it appears from the appraiser's report of April 29 last that it has been the practice at your port to classify beaded bracelets and beaded necklaces under paragraph

333 of the tariff act at the rate of 50 per cent ad valorem and the duty under paragraph 356 would be a higher rate, you are hereby directed to continue to assess duty upon the articles in question at the rate of 50 per cent ad valorem imported or withdrawn from warehouse within 30 days from the date hereof, after which date you are directed to assess duty on such articles at the rate of 60 per cent ad valorem as articles commonly and commercially known as jewelry under paragraph 356 of the tariff act.

The order directing a change of that practice so recognizes, by directing 30 days' notice to importers before the change shall be enforced, thereby very justly permitting "ordered" importations time for entry before the *new ruling* becomes effective.

This court at intervals has expressly or impliedly expressed the same view. Many, if not most, of the articles here in question are composed of imitation jet. This court, in United States *v.* Beierle (1 Ct. Cust. Appls., 457; T. D..31506), after reviewing the statutes and decisions, concluded:

We think that it may be unqualifiedly said that from 1846 to the time of the enactment of the tariff law of 1909 all legislation upon the subject uniformly observed the distinction for tariff purposes between articles in imitation of jet and articles of jewelry, or commonly known as jewelry.   *   *   *

Counsel for the Government seeks to avoid this precedent by the claim that whereas the act of 1909, paragraph 448, by express language excluded articles of jewelry if set with imitation jet, this exclusion is omitted from the corresponding paragraph (356) of the act of 1913. We do not think the omission of an excluding, any more than of an including, term from a provision of a tariff act necessarily operates to include therein previously thereby excluded articles. Seeberger *v.* Cahn (137 U. S., 95); Arthur *v.* Stephani (96 U. S., 125). It seems more natural to assume that Congress, finding that imitation jet articles had uniformly and finally been declared not within the term jewelry, omitted this redundancy of expression. The Beierle case was reaffirmed and followed by this court in United States *v.* Sheldon & Co. (2 Ct. Cust. Appls., 283; T. D. 32034). ·

In United States *v.* American Bead Co. (3 Ct. Cust. Appls., 509; T. D. 33166) this court discussed and differentiated beads "adapted for use as strings of beads" and in imitation of precious stones adapted for use in jewelry.

In United States *v.* Flory & Co. (4 Ct. Cust. Appls., 87; T. D. 33367) the Government expressly abandoned that part of its appeal affecting jet articles which were claimed jewelry.

In United States *v.* Kraemer & Co. *et al.* (5 Ct. Cust. Appls., 294; T. D. 34474) a part of the goods in question were "necklaces constructed of glass beads and cotton strings with a brass clasp," which had been assessed by the collector under paragraph 421 of the act of 1909 as "articles composed wholly or in chief value of beads." They were by the board held dutiable as toys. This court reversed

the decision of the board, holding them properly classified by the collector. While the jewelry issue was not made, the decision may not be authority, but the fact that the assessment and claim were not made is instructive.

The case of Kraemer & Co. *v.* United States (5 Ct. Cust. Appls., 470; T. D. 35003) concerned certain necklace clasps. Apparently they were of wrought metal. The court distinctly rested the decision holding them parts of jewelry upon the ground that they were sold to jewelers and that "they are apparently as susceptible of use on necklaces of metal as of beads," thereby reserving out of the case decision, if not assuming, that bead necklaces were jewelry.

The court in United States *v.* American Express Co. (6 Ct. Cust. Appls., 97; T. D. 35341) sharply drew the distinction between chains ornamented with imitation precious stones and brass or gold colored chains on the one hand and plain black ornamented metal chains, holding the former "commonly" known as jewelry and the latter so only because proven commercially so known.

From the foregoing it is made clear that as to imitation jet articles this court has already declared, and as to other beaded articles, nonmetallic and not in imitation of precious stones, assumed, that they had been allotted by Congress a different tariff status from jewelry commonly or commercially so known.

Frequently, also, this court has held or assumed that necklaces and chains in imitation of precious stones and the precious metals were classifiable as jewelry. United States *v.* Cohn & Rosenberger (3 Ct. Cust. Appls., 273; T. D. 32571); United States *v.* Goldberg's Sons *et als.* (3 Ct. Cust. Appls., 282; T. D. 32573); Guthman, Solomons & Co. *v.* United States (3 Ct. Cust. Appls., 286; T. D. 32574); United States *v.* Flory & Co. (4 Ct. Cust. Appls., 87; T. D. 33367); Cohn & Rosenberger *et als. v.* United States (4 Ct. Cust. Appls., 378; T. D. 33536); Lorsch & Co. *et al. v.* United States (5 Ct. Cust. Appls., 93; T. D. 34132); United States *v.* International Forwarding Co. (6 Ct. Cust. Appls., 25; T. D. 35272). Likewise it has been held metal beads strung made of base and not precious metals are not jewelry but manufactures of metal. Frankenberg Co. *v.* United States (206 U. S., 224).

Equally persuasive is the present legislative concept. We have heretofore set out in full the congressional code in force affecting beads and beaded articles and jewels and jewelry, paragraphs 333, 356, and 357. While the language of the "jewelry" paragraph, 356 of the act of 1913, is conspicuously narrowed in material particulars from the scope of its predecessor paragraph, 448 of the act of 1909, the provisions of the here competing paragraph, 333 of the act of 1913, providing for beads and beaded articles is enlarged beyond its

predecessor paragraph, 421 of the act of 1909. This patent fact leads us to the same and fortifies the conclusion reached with reference to the relative specificity of paragraphs 333 and 356 by this court in comparing paragraphs 333 and 358, this act, in Lowenthal & Co. et al. v. United States (6 Ct. Cust. Appls., 209; T. D. 35464). We therein said:

Bearing in mind, therefore, the amended act, and reading together all the amending provisions, we think the congressional purpose clear to provide by paragraph 333 for all articles in chief value of beads, * * *.

The court views that it was intended as an exhaustive provision as to its subject matter (1) beads and spangles, (2) articles composed wholly and in chief value of beads and spangles, only to be invaded by some other clearly and more specifically expressed intention of Congress. We do not herein find any such intention but the contrary expressed.

(1) Because Congress has expressly indicated in the jewelry paragraph, 356, that a class of articles "designed to be worn on apparel or carried on or about or attached to the person" should bear the jewelry rate, 60 per cent, and has therein concededly declared that such must be "composed of metal," which these admittedly are not, it is persuasive that Congress did not intend to include in the jewelry paragraph any other such articles unless they were commonly or commercially known as jewelry.

(2) Because Congress has consistently and for many years provided separately, sometimes at the same and sometimes at different rates of duty, for beads and articles composed of beads and jewelry commonly or commercially so known, thereby clearly declaring them different subjects of tariff classification and duty, and has continued that policy with emphasis in this act, the court does not feel justified in declaring such distinction not to exist and that Congress intended to include either in the other.

(3) There are concededly beaded necklaces commonly regarded as jewelry (imitation or real), such as pearl or gold-beaded necklaces, or imitations thereof [United States v. Goldberg's Sons et al. (3 Ct. Cust. Appls., 282; T. D. 32573); United States v. Kraemer & Co. et al. (5 Ct. Cust. Appls., 294; T. D. 34474)] and silver necklaces set with pearls [United States v. Cohn & Rosenberger (3 Ct. Cust. Appls., 273; T. D. 32571)], or white metal set with precious stones [United States v. International Forwarding Co. (6 Ct. Cust. Appls., 25; T. D. 35272)], which are commonly regarded as jewelry. There are also beaded necklaces equally regarded as not commonly known as jewelry, such as shell, seed, and wooden beaded necklaces, and such necklaces as are made of bear's claws, or elk's teeth, and the like, none of which is the product or imitation of the work and skill of

the jeweler nor found in jewelry stores, but is the product of various manufacturers and more commonly found in general merchandise stores. They are ornaments for personal adornment only, but are not commonly known as jewelry.

(4) Without attempting a fixed definition of jewelry or to declare a hard and fast line of distinction between these competing paragraphs the recitals therein by Congress, taken in connection with well-known general incidents of jewelry, real and imitation, are notably significant. Jewelry as therein indicated and in the common conception is composed of the precious metals or imitations thereof; or, of precious or semiprecious stones, pearls, or imitations thereof, or cameos, coral, or amber, including artificial, synthetic, or reconstructed pearls, rubies, or other precious stones, strung or set.

Common conception of what constitutes a named article of necessity resides in its physical attributes as presented to the vision. While the caprice of fashion or the advantages of trade may in trade vary this understanding, it is only commercially and not commonly so, for the common acceptation remains the same notwithstanding the periodical appearance of what may commonly be regarded as unusual personal adornments, denominated possibly by interested trade as jewelry. Undoubtedly, therefore, the common acceptation of jewelry readily refers the mind to articles made from the precious metals and stones and imitations thereof.

On the other hand, beaded articles may be made of any material and may or may not be worn upon or about or attached to the person. To illustrate: Necklaces made of the precious metals or imitations thereof have been held by this court as jewelry, commonly so known. Cases cited, *supra.*

Likewise, necklaces in imitation of the precious stones. Cases cited, *supra.*

Now, jet is not a precious or semiprecious stone, but a variety of mineral coal. Accordingly, we have held imitation jet articles not jewelry commonly so known. United States *v.* Beierle (1 Ct. Cust. Appls., 457; T. D. 31506). So, also, held the Supreme Court of metal (nonprecious) beads, strung. Frankenberg Co. *v.* United States (206 U. S., 224).

There are herein certain samples of beaded necklaces made in imitation of amber beads. Inasmuch, however, as Congress in paragraph 357 has not classed amber as a precious or semiprecious stone or material for use in the manufacture of jewelry, and in paragraph 356 has expressly avoided its enumeration among the imitations of settings rated at 60 per cent, the purpose seems obvious not to have so rated for duty imitations of amber.

The decision of the Board of General Appraisers is, therefore, *reversed.*