(C. D. 1540)

ALLEN FORWARDING CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided July 2, 1953)

*Sharretts, Paley & Carter* (*Howard C. Carter* and *Joseph F. Donohue* of counsel) for the plaintiff.

*Warren E. Burger,* Assistant Attorney General (*John J. McDermott* and *Richard E. FitzGibbon,* special attorneys), for the defendant.

Before OLIVER and MOLLISON, Judges

MOLLISON, Judge: The merchandise the subject of this protest consists of leather and is described on the consular invoices accompanying the entries as "Plain Boarded Sides" and as "Black Sides." It was assessed with duty at the rate of 15 per centum ad valorem under the provision in paragraph 1530 (d) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, for "Leather * * *, grained," and is claimed to be properly dutiable at the rate of 12½ per centum ad valorem under the provision in paragraph 1530 (b) (4) of the same act, as so modified, for "upper leather made from * * * kip skins; * * * not cut or wholly or partly manufactured into uppers, vamps, or any forms or shapes suitable for conversion into boots, shoes, or footwear." For ready reference, the pertinent portions of the texts of the competing provisions, as modified, are set forth in the margin. [1]

It is clear from an examination of the record and of the briefs filed on behalf of the parties that the issue has been resolved into the single question of whether or not the leather at bar is "grained" within the meaning of that term as used in paragraph 1530 (d), *supra*. The plaintiff has established that the leather at bar was made from kipskins, finished or partly finished, which in its imported condition was not cut or wholly or partly manufactured into uppers, vamps, or any forms or shapes suitable for conversion into boots, shoes, or footwear. It is therefore provided for under paragraph 1530 (b) (4), *supra*, under which plaintiff claims, unless it is within the express exception to the said subparagraph as leather provided for in subparagraph (d), *supra*, specifically, as grained leather.

There is no question but that the processes which brought the leather at bar to the condition in which it was imported were washing and dehairing, tanning, stretching, boarding, and placing a finish on top. There is likewise no question but that of the foregoing processes

| [1] Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 1530 (b) * * * (4) | Leather (except leather provided for in subparagraph (d) of paragraph 1530, Tariff Act of 1930), made from hides or skins of cattle of the bovine species: <br> * * * * * * * <br> Side upper leather (including grains and splits), * * *, and leather made from calf or kip skins, rough, partly finished, or finished, * * *: <br> Side upper grains and finished splits (except wax splits), and upper leather made from calf or kip skins; all the foregoing, not cut or wholly or partly manufactured into uppers, vamps, or any forms or shapes suitable for conversion into boots, shoes, or footwear. | 12½% ad val. |
| | * * * * * * * | |
| 1530 (d) | Leather of all kinds, grained, printed, embossed, ornamented, or decorated, in any manner or to any extent * * * all the foregoing by whatever name known, and to whatever use applied. | 15% ad val. |

that of "boarding" is the one which impelled the collector to classify the merchandise as "grained" leather. "Boarding" is a process, performed by hand or by machine, which consists of rubbing leather with a board.

If performed upon the hair or "grain" side of leather, and carried on far enough, it seems clear that the end effect of boarding is to bring out, accentuate, and raise the natural grain of the skin, and it has been held that in such case the leather is "grained" within the common meaning of the term. *United States* v. *John B. Stetson Co.*, 21 C. C. P. A. (Customs) 3, T. D. 46319.

It also seems clear, however, that boarding of leather may be so performed as to have the effect merely of softening the leather and facilitating its further manufacture, and even though, as a result of such process, there is some change in the surface finish, it is not sufficient to produce a "clearly perceptible grain" which otherwise would not have been there. See in this connection T. D.'s 46691 and 49125, being instructions of the Bureau of Customs to collectors of customs on the subject, and *Calf Leather Tanners' Ass'n et al.* v. *Morgenthau, Secretary of the Treasury*, 80 F. (2d) 536.

While admitting that the leather in issue had been boarded, it is one of the alternative contentions of the plaintiff that the boarding did not accentuate the natural grain of the leather, but merely made it more pliable and smooth. The evidence with respect to this claim is rather unsatisfactory from the standpoint of making a precise determination as to whether the imported merchandise had been "grained" within the common meaning of that term as laid down in the *Stetson Co.* case, *supra*.

As hereinbefore stated, the common meaning of the term "grained" in connection with leather refers to leather which has had the natural grain of the skin brought out, accentuated, and raised by a process or manipulation known as "boarding." We have before us, as plaintiff's collective exhibit 1, 10 pieces of leather identified by plaintiff's witness Goldenberg as the same in all respects as the imported merchandise. It appears that no samples of the merchandise imported under the entries here involved were available, and the 10 pieces of leather constituting plaintiff's collective exhibit 1 were therefore offered as representative of the shipments here in issue. Mr. Goldenberg was one of the partners of the company which was the ultimate consignee of the merchandise at bar, who saw the merchandise upon importation, and who followed it through the manufacturing processes to which it was subjected.

It is difficult to determine anything conclusive from an examination of the 10 pieces of leather in collective exhibit 1, which constitutes practically all of the evidence offered by the plaintiff on the common meaning phase of the case. Some of them show little, if any, natural

grain, while at least one piece, marked "1–A," shows what seems to be a rather pronounced grain.

Inasmuch as the collector of customs, in classifying the merchandise as "grained" leather, is presumed to have found to exist every fact necessary to that classification, one such fact being that the imported merchandise exhibited a clearly perceptible grain which would not have been there but for the boarding operation, we must hold that plaintiff has failed to sustain its burden of proof insofar as the contention that the merchandise is not "grained" within the common meaning of the term is concerned.

Plaintiff's principal contention, however, is that in the trade and commerce of the United States which dealt at wholesale in leather such as that at bar, during the period from immediately prior to June 17, 1930, until the time of the trial of the present case, there existed for the tariff term "grained," when used in connection with kip leather such as that at bar, a meaning which was different from the common meaning thereof; that such commercial meaning was definite, general, and uniform throughout the United States; and that such meaning excluded from its purview leather in the condition of that at bar. Plaintiff, therefore, invokes the doctrine of commercial designation, which requires that where a difference exists between the common and commercial meanings of tariff terms the commercial meaning controls the classification.

In support of its contention, plaintiff called four witnesses to testify, each of whom had been in the business of buying, selling, dealing in, and/or using at wholesale kip leather such as that at bar at and prior to June 17, 1930, the date of the enactment of the Tariff Act of 1930, in which the term "grained" first appeared. The same term was used in the subsequent modification of paragraph 1530 (d) of the Tariff Act of 1930 contained in the trade agreement with the United Kingdom reported in T. D. 49753, effective January 1, 1939, and in the General Agreement on Tariffs and Trade reported in T. D. 51802, effective January 1, 1948.

Each of these witnesses was read a definition taken from Funk & Wagnalls New Standard Dictionary, 1931, of the verb "grain," which definition was used by our appellate court as an authority in its determination in the *Stetson Co.* case, *supra*, of the common meaning of the term "grained" as follows:

To rub with a board to raise the grain or pattern,

and each witness stated that at and prior to June 17, 1930, on January 1, 1939, and January 1, 1948, in the wholesale trade of the United States dealing in kip leather the meaning of the term differed from that expressed in the definition.

Each witness stated in substance that the term "grained" in such trade at the times specified referred to leather on which a grain or

grain effect was placed by processes of printing or embossing, and that leather such as plaintiff's collective exhibit 1, which was not subjected to such process of printing or embossing, was not within the term "grained" as used in such trade.

The experience of the witnesses was shown to cover the places in the United States in which kip leather was and is bought and sold, and each stated that such meaning in such trade was and is definite, general, and uniform.

Opposed to the evidence given by plaintiff's witnesses, defendant offered the testimony of one witness. Careful examination of the record, however, shows that the witness was unqualified to give evidence within the area of the rule of commercial designation as the extent, in point of time, of his experience was shown to be insufficient.

Commercial designation is matter of fact, and is established or found upon evidence. *American Bead Co.* v. *United States*, 7 Ct. Cust. Appls. 18, T. D. 36259. Upon the record here made, we hold that the plaintiff has established by a preponderance in weight of the evidence all of the facts necessary to support its contention, under the rule of commercial designation, that the merchandise at bar was not "grained" within the meaning of that term as used in paragraph 1530 (d) of the Tariff Act of 1930, both as originally enacted and as subsequently modified.

As the issue as to the meaning of the term "grained" was the only issue remaining in the case, it having been established that the leather at bar was otherwise properly classifiable under the provisions of paragraph 1530 (b) (4) of the Tariff Act of 1930, that claim in the protest is sustained, and judgment will issue accordingly.