UNITED STATES *v.* E. DILLINGHAM, INC. (No. 4781)[1]

[1] C. A. D. 555.

United States Court of Customs and Patent Appeals, March 23, 1954

*Warren* E. *Burger*, Assistant Attorney General (*William J. Vitale*, special attorney, of counsel), for the United States.

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellee.

[Oral argument February 3, 1954, by Mr. Vitale and Mr. Schwartz]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and JACKSON (retired), Associate Judges

JOHNSON, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, entered pursuant to its decision, C. D. 1518, which sustained the claim by the importer in a protest against the classification by the Collector of Customs of certain pieces of wood imported from Canada, and sawn to sizes 1 inch by 1 inch by 18 to 44 inches, squared at the ends and to be used in the production of window shade rollers.

The merchandise, which was invoiced as "pickets," was assessed for duty at the rate of 25 cents per 1000 feet, board measure, as provided for in paragraph 401 of the Tariff Act of 1930, as modified by the general agreements on Tariffs and Trade (T. D. 51802), as sawed pine lumber not specially provided for. The importer claimed that the goods are entitled to entry free of duty as "pickets" under paragraph 1805 of the Tariff Act of 1930.

The pertinent provisions of the involved statutes are:

Par. 401, as modified by T. D. 51802:
  Sawed lumber and timber not specially provided for, if of fir, spruce, pine, hemlock, or larch, 25¢ per 1000 ft., board measure.
Par. 1805. (Free List):
  Pickets, palings, hoops, and staves of wood of all kinds.

At the trial, appellee produced six witnesses and the Government produced three. Numerous exhibits were introduced in evidence by both parties. There is no dispute that the involved merchandise is made of pine wood and that after importation the pine wood is made into window shade rollers by being turned round, bored, fitted with springs and metal fasteners.

Samples of the involved merchandise were received in evidence as Plaintiff's Collective Exhibits 1 and 2. Also received in evidence were certain orders and acknowledgements (Plaintiff's Collective Exhibit 3), referring to merchandise similar to the involved merchandise as "pickets" and dated between the years 1920 and 1930; certain orders and acknowledgements (Plaintiff's Collective Exhibit 4), referring to merchandise similar to the involved merchandise as

"pickets" and dated between the years 1931 and 1950. Appellee's Collective Exhibit 5 is a group of invoices dated between 1920 and 1930 from lumber mills and wholesalers designating merchandise similar to that involved here as "pickets." Appellee's Collective Exhibit 6 contains a group of papers of the same character as appellee's Collective Exhibit 5 but dated between 1931 and 1939 and appellee's Collective Exhibit 7 is a group of papers of the same character but dated between 1940 and 1950. Appellee's Collective Exhibits 10 and 11 are certain documents of Columbia Mills, Inc. (manufacturers of window shades) known as "picket contracts" designating merchandise similar to that here involved as "pickets."

The records in the cases of *In re Minetto Shade Cloth Co.*, (T. D. 20243—G. A. 4299) and *In re Quaker Shade Roller Co.*, (T. D. 25861—G. A. 5781) were incorporated in the record as Appellee's Exhibits 8 and 9, respectively.

The Government's Exhibit "A" is a white pine price list issued by White, Gratwick & Mitchell, Inc., a wholesale lumber concern in North Tonawanda, New York, in 1911, which lists "white pine pickets" and the Government's Exhibit "B" is a catalog issued by the Dubois Fence and Garden Company of Ridgefield, New Jersey, on February 1, 1940, which illustrates the spacing of pickets on sections of fencing similar to methods used prior to 1930.

Wayne Lowe testified that he is General Manager of appellee, the consignee in this case; that during 1923 and 1926 he purchased articles similar to those here involved in the United States by the name of "pickets;" that the articles were then and are now known in the window shade roller industry as "pickets." The other witnesses for appellee testified that merchandise similar to that here involved, which was purchased both in the United States and abroad, was purchased as "pickets" and that merchandise such as here involved has always been known and bought and sold as "pickets" in the window shade manufacturing industry of the United States.

Appellee contends that the doctrine of legislative approval of judicial decisions is controlling and in its brief points out that in the incorporated cases of *In re Minetto Shade Cloth Co.* and *In re Quaker Shade Roller Co.*, *supra*, merchandise similar to that here involved was held to be "pickets" under the provisions of paragraph 202 of the tariff act of 1897, and that in the tariff acts of 1909, 1913, 1922, and 1930 the provision for "pickets" have been reenacted without change from paragraph 202 of the tariff act of 1897.

The Government contends that the doctrine of legislative approval of judicial decision does not apply here because it was the intent of Congress to limit the term "pickets" as used in paragraph 1805 of the Tariff Act of 1930 to such articles as are commonly known as "pickets," which are used only in the construction of fences, and that

the involved merchandise does not fall within the common or commercial meaning of the term "pickets" as used in the statute.

In support of its contentions the Government's witnesses, two of whom were lumber dealers and one a dealer in wooden fences, testified that the meaning of the term "pickets" in the lumber and fencing industries of the United States at and prior to the enactment of the Tariff Act of 1930 was the same as the definition of "pickets" as found in Webster's New International Dictionary, i. e. "1. a pointed or sharpened stake, post, peg, or pale; as: (a) a pale used in making fences." The Government cites the cases of *Pitt & Scott* v. *United States*, 47 Treas. Dec. 948, Abstract 48792, and *Van Oppen & Co.*, *et al.* v. *United States*, 48 Treas. Dec. 775, Abstract 50576, which cases involved "pickets" or palings made of wood and used in the construction of fences, in an effort to show that the intention of Congress with respect to "pickets" when it enacted the Tariff Act of 1930.

In the Summary of Tariff Information, 1929, compiled by the United States Tariff Commission for the use of the Committee on Ways and Means of the House of Representatives when it had under consideration the revision of the Tariff Act of 1922, the decisions in the *Pitt & Scott* and *Van Oppen & Co.* cases, made under the Tariff Act of 1922, were called to the attention of Congress and in the Summary under the heading "Pickets and palings" it is stated:

*Descriptions and uses.*—Pickets and palings are principally of two types; squares of approximately 1¼ by 1¼ inches, 3 feet or 4 feet long, dressed four sides and pointed, and flat pickets approximately 1 by 3 inches, 3 feet or 4 feet long, dressed four sides, and either pointed or spear headed. Both kinds are used in fence construction.

We do not think the above shows that Congress intended to include only fence "pickets" in paragraph 1805. The very wording of the Summary states that "pickets and palings are *principally* of two types * * *" (Italics added) and "Both kinds are used in fence construction" but it does not say that they are used *only* in fence construction.

The evidence does not show the commercial meaning of the term "pickets" to be different from the common meaning of the term. Appellant's witnesses established the meaning of the term in the lumber and fence industry and appellee's witnesses established the meaning of the term in the shade roller industry.

The decision of the Customs Court correctly states:

Commercial designation is an issuable fact, and can be established or found only upon evidence. *American Bead Co.* v. *United States,* 7 Ct. Cust. Appls. 18, 21, T. D. 36259, and cases therein cited. Where relied upon, commercial designation must be proved by a preponderance in weight of the evidence. *French Kreme Co. et al.* v. *United States,* 18 C. C. P. A. (Customs) 301, T. D. 44505.

On the other hand, the determination of the common meaning of words (and this includes the commercial meaning when it and the common meaning are the same) is matter of law. *Marvel* v. *Merritt,* 116 U. S. 11, 29 L. ed. 550, and *Sonn*

*v. Magone,* 159 U. S. 417, 40 L. ed. 203. In such determinations, evidence as to the commercial meaning of the term is advisory only, not binding upon the court, to assist it in the determination of the question of law as to the common meaning of the term in question. *United States* v. *Ben Felsenthal & Co. et al.,* 16 Ct. Cust. Appls. 15, 18, T. D. 42713.

There is nothing in the decisions in the incorporated cases of *In re Minetto Shade Cloth Co.* and *In re Quaker Shade Roller Co.* to indicate that those decisions were based upon the application of the rule of commercial designation or that the court in either case found or considered that the common meaning of the term "picket" differed from the commercial meaning thereof. In the absence of evidence to the contrary it must be presumed that the commercial meaning of words is the same as their common meaning. *Swan* v. *Arthur,* 103 U. S. 597, 598, 26 L. Ed. 525, 526.

The cases of *In re Minetto Shade Cloth Co.* and *In re Quaker Shade Roller Co.* having judicially defined the common meaning of the term "pickets" we think such meaning should be adhered to until such time as Congress should determine otherwise. The decisions in the above cases were made under the provisions of the tariff act of 1897. They were called to the attention of Congress at the time that act was under consideration by virtue of the "Notes on Tariff Revision" prepared for the use of the Committee on Ways and Means of the House of Representatives wherein, under the heading "Paragraph 202" (of the tariff act of 1897), and the subheading "Decisions," is the following:

In G. A. 4299 (T. D. 20243, October 25, 1898) and in G. A. 5871 (T. D. 25861, December 19, 1904) pieces of white pine varying in length from 2 to 4 feet and 1 inch square, intended to be turned into rollers for window shades, were held dutiable as pickets.

In the tariff acts of 1909, 1913, 1922, and 1930 the provision for "pickets" was reenacted without change from paragraph 202 of the tariff act of 1897. Repeated reenactments in identical terms of a tariff provision, and without a substantial change of context, after the same has been construed in an authoritative decision, will be accepted as a legislative approval of the construction contained in that decision. *United States* v. *Ascher & Co.,* 11 Ct. Cust. Appls. 453, T. D. 39532.

The construction of the term "pickets" as including merchandise such as here involved to be used for shade rollers was adopted and long followed by the administrative branch of the Government as shown by the decision of the Bureau of Customs published for the information and guidance of Customs Officers in 64 Treas. Dec. 37, T. D. 46515 (1), wherein the following is stated:

(1) *Pickets.*—Sticks of white pine 1 inch by 1 inch by various lengths, imported to be turned into rollers for window shades, are commercially known as pickets and entitled to free entry as such under paragraph 1805, Tariff Act of 1930.

T. D. 20243 cited and followed. T. D. 45887 noted. Bureau letter to collector of customs, Detroit, Mich., dated June 23, 1933. (32–4/1805.)

Where a given term in a tariff statute has been judicially interpreted and thereafter reenacted in substantially the same language, the given term will, if found in a later statute, be given the same interpretation, unless a contrary legislative intent clearly appears. *United States* v. *Kawahara*, 15 Ct. Cust. Appls. 231, T. D. 42242. Also see *Bentkamp* v. *United States*, 40 C. C. P. A. (Customs) 70, C. A. D. 500. We do not find such intent as to the statute here involved.

We have carefully considered appellant's brief and the cases cited therein but find no reason to disturb the holding of the Customs Court. For the reasons hereinbefore stated the judgment appealed from is *affirmed*.

JACKSON, J. (retired), sat for COLE, J., who participated in the case below.