UNITED STATES *v.* WOOLWORTH CO. (No. 2031).[1]

1. EVIDENCE, JUDICIAL NOTICE.
    The matter of common acceptation is always one wherein the court will be guided by the samples and its judicial knowledge and will not be controlled against its judgment.

2. CONSTRUCTION AIDED BY CONTEXT—JEWELRY, VALUE NO CRITERION.
    The provision of paragraph 356, tariff act of 1913, for such jewelry as is valued above 20 cents per dozen pieces indicates that, in the congressional view, there is cheaper jewelry, and serves to show that whether or not merchandise is to be classified as jewelry is not to be determined by its value.

3. IMITATION PEARL NECKLACES—JEWELRY—ARTICLES MADE OF BEADS.
    Necklaces made of wax-filled glass imitation pearl beads permanently strung and fitted with metal clasps and imitation pearl pendants are classifiable as "jewelry" (par. 356, tariff act of 1913), and not as articles of beads (par. 333).

United States Court of Customs Appeals, November 23, 1920.

APPEAL from Board of United States General Appraisers, G. A. 8320 (T. D. 38270).

[Reversed.]

*Bert Hanson,* Assistant Attorney General (*Charles D. Lawrence,* special attorney, of counsel), for the United States.
*Sharretts, Coe & Hillis* for appellee.

[Oral argument Nov. 5, 1920, by Mr. Lawrence and Mr. Sharretts.]

Before SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

It is agreed by all parties to this appeal that the subjects thereof are "imitation pearl necklaces." They are of a cheap variety carried in the jewelry department of the stores of these importers. They are, however, concededly valued at "above 20 cents per dozen pieces." They consist of imitation pearl beads made of glass filled with wax, permanently strung, fastened with a metal clasp, and have as a part thereof an imitation pearl pendant, pear shaped, which constitutes a substantial and attractive part of the necklace. This pendant is easily a sufficiently important part of the necklace to, in common estimation, take the articles out of the category of *strings of beads* and place them within the popular conception of

---

[1] T. D. 38552 (38 Treas. Dec., 760).

*necklaces*, the pendant being a usual and even characteristic part of many necklaces. These necklaces, while cheap in appearance and structure, in no material wise differ from many concededly valuable pearl necklaces; and, if worn by one of known means, might readily be mistaken for such.

The articles were classified by the collector of customs at the port of New York as "jewelry" under the first part of paragraph 356, tariff act of 1913, reading:

356. Jewelry, commonly or commercially so known, valued above 20 cents per dozen pieces, 60 per centum ad valorem; * * *

The importers protested and, on appeal to the Board of General Appraisers, were sustained in their claim that the articles were properly dutiable as "articles * * * composed wholly or in chief value of beads or spangles made of glass or paste, * * * or other material," within the terms of paragraph 333 of said act, reading:

333. Beads and spangles of all kinds, including imitation pearl beads, not threaded or strung, or strung loosely on thread for facility in transportation only, 35 per centum ad valorem; curtains, and other articles not embroidered nor appliquéd and not specially provided for in this section, composed wholly or in chief value of beads or spangles made of glass or paste, gelatin, metal, or other material, 50 per centum ad valorem

At the hearing below but one witness testified. This witness had been in charge of the jewelry department of importers' stores for many years. While he gave it as his opinion that they would not by the trade be classed as "jewelry," on cross-examination he testified that the *beads* were of the type commonly designated as imitation pearl beads, and that the *articles* were in fact necklaces to be worn around the neck for ornamentation. While much stress is laid upon his testimony, that the articles nevertheless are not jewelry, a close reading of it shows that generally when so stating he had in mind the *individual* beads and not strings thereof with clasp and pendant as here imported. For example, the board in support of its view quotes him verbatim: "They are simply beads, known commercially as beads and they are used not only *for* necklaces, but *for* dress ornaments and other things." Certainly witness was not here speaking of *necklaces* as being used *for* necklaces or for "dress ornaments," but was speaking of and clearly had in mind the beads out of which these necklaces were *in part* made and beads, not necklaces, used to ornament dresses.

The matter of common acceptation is always one wherein the court will be guided by the samples and its judicial knowledge, and will not be controlled against its judgment. The only element of the case militating against these articles being deemed jewelry is their cheapness. Congress, however, in enacting the pertinent part of

paragraph 356, quoted supra, anticipated this difficulty and pre-scribed in such cases a statutory criterion for determination under which such cheap articles should, if valued at "above 20 cents per dozen pieces," be held jewelry, and, if under that value, they, though deemed jewelry, should not be held dutiable as such. As these arti-cles are valued at above 20 cents per dozen pieces, and are by the court deemed commonly known as jewelry, they must be decreed dutiable as such.

The question is not here new. Indeed, earlier decisions of this court are here decisively controlling. It may be well first to examine paragraph 333. It will be noted that in its first part providing for "beads" and "spangles" (materials) the significant phrase "imita-tion pearl beads" is added. In its second part, providing for articles made of the materials enumerated in the first portion thereof, while "beads" and "spangles" are enumerated, the phrase "imitation pearl beads" is dropped. Whatever purpose prompted Congress to insert the words in the first instance did not exist in the latter. Plainly the materials for these necklaces would, unstrung, or strung for transportation only, fall within the first part of the paragraph eo nomine. But quere, did not their immediate omission from the latter part of the paragraph indicate that Congress deemed articles made of such, otherwhere provided for, and by the omission intend to deprive the latter part of the paragraph of the high inclusiveness accorded the former, as to the particular subject, articles made of imitation beads?

When we turn to paragraphs 356 and 357, providing for jewelry and materials therefor, we find Congress again manifesting its purpose to do so eo nomine. In these paragraphs Congress enumer-ates "imitation pearls" and "imitation precious stones, *including* pearls and *parts thereof.*"

These paragraphs and their inclusiveness have so frequently been construed and interpreted by this court that advertence to these adjudications will add authority to the expressed reasoning. Partic-ularly apposite is Cohn & Rosenberger *v.* United States (5 Ct. Cust. Appls., 339; T. D. 34533). Therein we discussed the relative com-petitive force of the precise words in paragraph 421 of the tariff act of 1909, "imitation pearl beads," and the identical phrase in paragraph 449 of that act, "imitation precious stones, including pearls and parts thereof." We said: "It is needless to add that in this comparison 'imitation pearls' is the genus and 'imitation pearl beads' is the species." See also Lorsch & Co. et al. *v.* United States (5 Ct. Cust. Appls., 93; T. D. 34132). In the subsequent case, American Bead Co. *v.* United States (7 Ct. Cust. Appls., 18; T. D. 36259), this court adverted to the fact of the existence of imitation pearl bead necklaces, and pointed out that in paragraphs 356 and

357 Congress had indicated by enumeration those materials of which. jewelry commonly so known is made. We therein in part said:

There are concededly beaded necklaces commonly regarded as jewelry (imitation or real), *such as pearl* or gold-beaded necklaces, *or imitations thereof* [United States *v.* Goldberg's Sons et al. (3 Ct. Cust. Appls., 282; T. D. 32573); United States *v.* Kraemer & Co. et al. (5 Ct. Cust. Appls., 294; T. D. 34474)] and silver necklaces set with pearls [United States *v.* Cohn & Rosenberger (3 Ct. Cust. Appls., 273; T. D. 32571)], or white metal set with precious stones [United States *v.* International Forwarding Co. (6 Ct. Cust. Appls., 25; T. D. 35272)], *which are commonly regarded as jewelry.* There are also beaded necklaces equally regarded as not commonly known as jewelry, such as shell, seed, and wooden beaded necklaces, and such necklaces as are made of bear's claws, or elk's teeth, and the like, none of which is the product or imitation of the work and skill of the jeweler nor found in jewelry stores, but is the product of various manufacturers and more commonly found in general merchandise stores. They are ornaments for personal adornment only, but are not commonly known as jewelry. (Italics ours.)

(4) Without attempting a fixed definition of jewelry or to declare a hard and fast line of distinction between these competing paragraphs the recitals therein by Congress, taken in connection with well-known general incidents of jewelry, real and imitation, are notably significant. Jewelry as therein indicated and in the common conception is composed of the precious metals *or imitations thereof;* or of precious or semiprecious stones, *pearls, or imitations thereof,* or cameos, coral, or amber, including artificial, synthetic, or reconstructed pearls, rubies, or other precious stones, strung or set. (Italics ours.)

That view of the court was again emphasized in United States *v.* Bartiromo (9 Ct. Cust. Appls., 183; T. D. 38003), and we also therein pointed out the significant insertion of the term "imitation pearl beads" in the first part of paragraph 333. The court remarked:

Accordingly, it may now be said that, by a long course of legislation, beaded articles and beads which are jewelry or materials suitable therefor, have been classified and treated by Congress as jewelry and jewelry materials. Accordingly such materials are provided for in paragraphs 356 and 357 and are not included within paragraph 333; and that legislative differentiation has become stare decisis in this court.

The careful precision of Congress in this particular is shown by the express inclusion by eo nomine designation in paragraph 333 of "imitation pearl beads" in more specific terminology than that employed in either paragraph 356 or 357. While one at least, if not both, of the latter paragraphs provides for imitation pearls, paragraph 333 selects out of these a particular species thereof, "imitation pearl *beads.*" Logically it follows that Congress deemed this express language, in addition to the words "beads * * * of all kinds," etc., in paragraph 333, necessary in order to take *any* imitation pearls out of the jewelry paragraphs. It follows that the same rule here applies, and that in order to take any of the imitation precious, semiprecious, or other jewelry stones named in paragraphs 356 and 357 therefrom for duty purposes and include them within paragraph 333, similar eo nomine designation is required.

We may well conclude this opinion by the language of the late presiding judge of this court in United States *v.* Kraemer & Co. et al. (5 Ct. Cust. Appls., 294; T. D. 34474), holding certain cheap *necklaces* of glass beads dutiable as jewelry under the tariff act of 1909. Speaking for the court the presiding judge said:

We are of the opinion that quite other tests must be applied than that of value. The article may be cheap and yet not a plaything. And this view has since been

adopted by the board. See Abstract 32185 (T. D. 33963). Use generally is a controlling consideration. See Illfelder v. United States (1 Ct. Cust. Appls., 100; T. D. 31115). The present case is devoid of evidence showing that the articles in question are used as toys. An inspection shows that they are adapted to use as articles of children's adornment—cheap, it is true, their use doubtless confined to people of limited means, yet nevertheless in their use filling the place for those who use them of more valuable jewelry.

*Reversed.*