UNITED STATES *v.* ANDREWS CO. (No. 3021)[1]

United States Court of Customs Appeals, January 30, 1928

*Charles D. Lawrence*, Assistant Attorney General (*Fred J. Carter*, special attorney, of counsel), for the United States.

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellee.

[Oral argument December 8, 1927, by Mr. Lawrence and Mr. Tompkins]

Before SMITH, BARBER, BLAND, and HATFIELD Associate Judges; GRAHAM, Presiding Judge, participating in the decision by agreement of counsel

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellee imported certain jade beads and strung seed pearls. These were classified by the collector for dutiable purposes as "jewelry, unfinished," under paragraph 1428 of the Tariff Act of 1922. The importer protested, claiming the goods were dutiable at 20 or 60 per centum ad valorem, under paragraph 1429 thereof; at 35 per

[1] T. D. 42589.

centum as beads, under paragraph 1403; or at 45 per centum as beads in imitation of precious stones, under said paragraph 1403; with several other alternative claims not material here. The Customs Court sustained the protest under said paragraph 1429, holding the goods to be dutiable at 20 per centum ad valorem. Although the court below does not explicitly so state, it is inferable from the opinion filed that it found the jade beads to be dutiable as semiprecious stones and the seed pearls to be dutiable as precious stones under the following provision of said paragraph 1429—

diamonds, coral, rubies, cameos, and other precious stones and semiprecious stones, cut but not set, and suitable for use in the manufacture of jewelry.

The Government appeals from the judgment of the court below, assigning, most particularly, that the court below erred in not holding said jade beads and seed pearls to be dutiable as beads, under said paragraph 1403, at 35 per centum ad valorem, and in holding said pearls to be precious stones. In the brief filed by the Government here, it is conceded that the Customs Court came to a correct conclusion as to the jade beads in controversy. The only remaining question for us is, therefore, are the seed pearls dutiable as precious stones, cut but not set, and suitable for use in the manufacture of jewelry, or as beads?

The pearls in question are genuine pearls, each about one-sixteenth of an inch in diameter, of irregular shapes, pierced, and strung on temporary strings, each of said strings of pearls being about 7 inches in length. After importation, the pearls were restrung and manufactured into tassels. There was no pretense that they were ever used in their imported condition. Nor is it contended that the collector's classification as "jewelry, unfinished" is correct.

The relevant statutes are as follows:

PAR. 1403. Spangles and beads, including bugles, but not including beads of ivory or imitation pearl beads and beads in imitation of precious or semiprecious stones, 35 per centum ad valorem; beads of ivory, 45 per centum ad valorem; fabrics and articles not ornamented with beads, spangles, or bugles, nor embroidered, tamboured, appliquéd, or scalloped, composed wholly or in chief value of beads or spangles other than imitation pearl beads and beads in imitation of precious or semiprecious stones, 60 per centum ad valorem; imitation pearl beads of all kinds and shapes, of whatever material composed, strung or loose, mounted or unmounted, 60 per centum ad valorem; all other beads in imitation of precious or semiprecious stones, of all kinds and shapes, of whatever material composed, strung or loose, mounted or unmounted, 45 per centum ad valorem: *Provided*, That no article composed wholly or in chief value of any of the foregoing beads or spangles shall pay duty at a less rate than is imposed in any paragraph of this act upon such articles without such beads or spangles.

PAR. 1429. Diamonds and other precious stones, rough or uncut, and not advanced in condition or value from their natural state by cleaving, splitting, cutting or other process, whether in their natural form or broken, any of the foregoing not set, and diamond dust, 10 per centum ad valorem; pearls and parts thereof, drilled or undrilled, but not set or strung, 20 per centum ad valorem;

diamonds, coral, rubies, cameos, and other precious stones and semiprecious stones, cut but not set, and suitable for use in the manufacture of jewelry, 20 per centum ad valorem; imitation precious stones, cut or faceted, imitation semi-precious stones, faceted, imitation half pearls and hollow or filled pearls of all shapes, without hole or with hole partly through only, 20 per centum ad valorem; imitation precious stones, not cut or faceted, imitation semiprecious stones, not faceted, imitation jet buttons, cut, polished, or faceted, and imitation solid pearls wholly or partly pierced, mounted or unmounted, 60 per centum ad valorem.

The question presented is one of some difficulty and calls for some extended comment upon the general purpose of the Congress, as expressed in the Tariff Act of 1922, relative to the classification of precious stones, pearls, and beads. In the construction of statutes, the intention of the lawmaker is to be deduced from the whole statute and every material part of the same. *Kohlsaat* v. *Murphy*, 96 U. S. 153.

Paragraph 1428 of said act, the jewelry paragraph, has, among other provisions, after enumerating jewelry and certain articles to be worn on or about the person, the following: "All the foregoing and parts thereof, finished or partly finished, composed of metal, whether or not enameled, washed, covered, or plated, including rolled gold plate, and whether or not set with precious or semiprecious stones, pearls, cameos, coral or amber, or with imitation precious stones or imitation pearls, 80 per centum ad valorem." Here, it will be observed, precious and semiprecious stones are mentioned specifically, as well as pearls and imitation pearls. When the words "precious or semiprecious stones" and "imitation precious stones" are followed by the words "pearls" and "imitation pearls," respectively, these following words are either words of limitation or of extension. If the words "precious or semiprecious stones" and "imitation precious stones" include pearls and imitation pearls within their meaning, then why did the Congress use the words "pearls" and "imitation pearls"? We can not impute to the Congress the intent to use unnecessary language, except on those rare occasions when the plain legislative intent compels a contrary construction. Here no such intent is apparent. We must conclude, therefore, that the Congress intended to provide for a duty upon pearls and imitation pearls, not under the general language of "precious and semiprecious stones" and "imitation precious stones," but under a specific designation of "pearls" and "imitation pearls." In other words, these latter words were words of extension.

Paragraph 1429 first provides for "diamonds and other precious stones, rough or uncut, and not advanced in condition or value from their natural state by cleaving, splitting, cutting, or other process, whether in their natural form or broken, * * * not set, and diamond dust." Following this, immediately, is the language "pearls and parts thereof, drilled or undrilled, but not set or strung."

Here, again, we see the distinction made between precious stones and pearls that was so apparent in paragraph 1428. If pearls are, within the purview of this statute, precious stones, there was no call to mention them so specifically, and the mere fact that they are so designated is in itself proof that such was not the legislative intent. The third provision enumerates "diamonds, coral, rubies, cameos, and other precious stones and semiprecious stones, cut but not set, and suitable for use in the manufacture of jewelry." Here are specified diamonds, coral, rubies, and cameos, followed by the language "and other precious stones."

Whatever may be said here in favor of the proposition that, by this language, Congress has intended to classify cut coral and cameos as precious stones, it is quite apparent that the same legislative intent has not been made apparent as to pearls. It will be noted that, although meticulous care has been used in other portions of the paragraph and act to mention specifically pearls and imitation pearls wherever duties are sought to be imposed upon them, here the words "pearls" and "imitation pearls" are noticeable by their absence. Whether the pearls before us may be said to be "cut," within the meaning of the statute, need not be determined by us here; but whether they are cut or not, there is nothing in the record or in the sample before us to indicate that they comply with the other requirement of this statute, namely, that they are "suitable for use in the manufacture of jewelry." The only showing on that point is that they are used for the manufacture of tassels. Nor are we able, from an inspection of the sample before us, to determine whether they are so suitable. So many factors may enter into a consideration of their suitability for such purpose that this court can not take judicial notice of that fact.

The succeeding clause of paragraph 1429 provides "for imitation precious stones, cut or faceted, imitation semi-precious stones, faceted," and "imitation half pearls and hollow or filled pearls of all shapes, without hole or with hole partly through." While the articles of importation before us could not come within this classification, it is useful to observe that here, again, a line of demarcation is drawn between imitation precious and semiprecious stones on the one hand and imitation pearls on the other, the imitation precious and semiprecious stones being such as are cut or faceted, and no such limitation being applied to imitation pearls.

Finally, the concluding clause refers to imitation precious and semiprecious stones and imitation solid pearls, wholly or partly pierced. Again we find the distinction drawn between imitation precious and semiprecious stones and imitation pearls.

If, then, pearls are not, within the meaning of paragraph 1429, to be considered as precious stones, what kinds of pearls and imitation

pearls are covered by the paragraph? First: Pearls and parts thereof, drilled or undrilled, not set or strung, at 20 per centum. The pearls before us are not within such classification, for they are strung. *Frankenberg Co.* v. *United States*, 206 U. S. 224. Second: Imitation half pearls and hollow or filled pearls of all shapes without hole or with hole partly through only, at 20 per centum. Third: Imitation solid pearls wholly or partly pierced, mounted or unmounted, at 60 per centum. It follows, therefore, that two classes have been omitted from this paragraph: First, pearls and parts, set or strung; second, completely drilled imitation half and hollow or filled pearls.

The conclusion is irresistible that the Congress must have had in mind that such omitted pearls and imitation pearls should be classified under some other statutory provision. It must be presumed that the Congress intended to cover the entire subject matter. That there are statutory provisions which embrace within their purview such omitted classes of pearls and imitation pearls is apparent from an inspection of paragraphs 1403 and 1428. If the pearls, or parts, or imitation pearls have been set or strung into such forms as are dedicated to use as or for jewelry, finished or unfinished, they are plainly classifiable as jewelry, finished or unfinished. *America Bead Co.* v. *United States*, 7 Ct. Cust. Appls. 18, T. D. 36259; *United States* v. *Woolworth Co.*, 10 Ct. Cust. Appls. 194, T. D. 38552. If they have not been so advanced, paragraph 1403 contains ample language to include them. The last-named paragraph enumerates, first, all beads, except beads of ivory or imitation pearls and beads in imitation of precious or semiprecious stones; second, beads of ivory; third, certain articles composed wholly or in chief value of beads and spangles other than imitation pearl beads and beads in imitation of precious or semiprecious stones; fourth, imitation pearl beads of all kinds and shapes, of whatever material composed, strung or loose, mounted or unmounted; fifth, other beads in imitation of precious or semiprecious stones.

It has long since been noted by the Supreme Court that genuine pearls, if drilled, might be and were recognized, in a tariff sense, as beads. *United States* v. *Morrison*, 179 U. S. 456. The language of the first clause of said paragraph 1403 would therefore be capable of including the pearls now before us. The fourth clause of said paragraph is amply broad to include all completely drilled imitation half and hollow or filled pearls, one of the classes not included within said paragraph 1429. The only other class of imitation pearls which might also be considered as beads because they are drilled, namely, imitation solid pearls, are included specifically within said paragraph 1429, in all forms. Why they are thus classified is apparent when it is observed that this particular kind of artificial pearls is classified at a very high rate of duty, 60 per centum ad

valorem, it being apparent that the Congress was designating this particular class of artificial pearls as one for which a greater degree of protective duty was required.

From this analysis of the relevant statutes we come to the conclusion that it was not the legislative intent to include pearls and imitation pearls within the general designation of "other precious stones," in said paragraph 1429, but that, wherever it was intended therein to impose a duty upon such goods, such duty was specifically provided for in conjunction with an *eo nomine* designation of pearls or imitation pearls.

A very similar question came before this court in *United States* v. *Woolworth, supra.* There the goods were imitation pearl necklaces, classified as jewelry and claimed to be beads, under the tariff act of October 3, 1913. The bead paragraph of that act was as follows:

333. Beads and spangles of all kinds, including imitation pearl beads, not threaded or strung, or strung loosely on thread for facility in transportation only, 35 per centum ad valorem; curtains, and other articles not embroidered nor appliquéd and not specially provided for in this section, composed wholly or in chief value of beads or spangles made of glass or paste, gelatin, metal, or other material, 50 per centum ad valorem.

The court said, in commenting upon said paragraph:

It may be well first to examine paragraph 333. It will be noted that in its first part providing for "beads" and "spangles" (materials) the significant phrase "imitation pearl beads" is added. In its second part, providing for articles made of the materials enumerated in the first portion thereof, while "beads" and "spangles" are enumerated, the phrase "imitation pearl beads" is dropped. Whatever purpose prompted Congress to insert the words in the first instance did not exist in the latter. Plainly the materials for these necklaces would, unstrung, or strung for transportation only, fall within the first part of the paragraph eo nomine. But quere, did not their immediate omission from the latter part of the paragraph indicate that Congress deemed articles made of such, otherwhere provided for, and by the omission intend to deprive the latter part of the paragraph of the high inclusiveness accorded the former, as to the particular subject, articles made of imitation beads?

When we turn to paragraphs 356 and 357, providing for jewelry and materials therefor, we find Congress again manifesting its purpose to do so *eo nomine*. In these paragraphs Congress enumerates "imitation pearls" and "imitation precious stones, *including* pearls and *parts thereof*."

Finally, the court below seems to have arrived at its conclusion that the pearls in question were classifiable under said paragraph 1429 largely upon the testimony of the witness Carroll, who testified, in answer to an interrogatory as to the character of the seed pearls in question: "They are a precious stone." This witness did not attempt to qualify as an expert and her testimony, if, in fact, it amounts to anything more than an expression of opinion, must be

taken as an attempt to define the common meaning of the term "precious stones." Such a statement is advisory only. *Nix* v. *Hedden*, 149 U. S. 304. It is not sufficient to establish a classification for these articles different from that fixed by their *eo nomine* designation in the statute.

The judgment of the Customs Court is affirmed as to the jade beads, and reversed as to the seed pearls, in question, and the cause is remanded for further proceedings in conformity with this opinion.

*Modified* and *remanded*.