UNITED STATES *v.* INVICTA SEELAND, INC. (No. 4102)[1]

[1] T. D. 49397.

United States Court of Customs and Patent Appeals, January 24, 1938

*Joseph R. Jackson*, Assistant Attorney General (*William Whynman*, special attorney, of counsel), for the United States.

*Curie, Lane & Wallace* (*Samuel Isenschmid* of counsel) for appellee.

*Barnes, Richardson & Colburn* (*Albert MacC. Barnes* and *Samuel M. Richardson* of counsel), *amicus curiae*.

[Oral argument December 10, 1937, by Mr. Whynman, Mr. Isenschmid, and Mr. Barnes]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

Appellee in this case imported at the port of New York certain watch movements, which were assessed with duty by the collector at

$2.50 each under paragraph 367 (a) of the Tariff Act of 1930. Appellee protested this assessment, claiming the movements to be dutiable at $2.25 each under the same paragraph. The Customs Court sustained this claim and entered judgment accordingly. From such judgment the Government took this appeal.

Paragraph 367 of said tariff act, insofar as it is here pertinent, reads as follows:

PAR. 367. (a) Watch movements, and time-keeping, time-measuring, or time-indicating mechanisms, devices, and instruments, whether or not designed to be worn or carried on or about the person, all the foregoing, if less than one and seventy-seven one-hundredths inches wide, whether or not in cases, containers, or housings:

(1) If more than one and one-half inches wide, $1.25 each; if more than one and two-tenths inches but not more than one and one-half inches wide, $1.40 each; if more than one inch but not more than one and two-tenths inches wide, $1.55 each; if more than nine-tenths of one inch but not more than one inch wide, $1.75 each; if more than eight-tenths of one inch but not more than nine-tenths of one inch wide, $2 each; if more than six-tenths of one inch but not more than eight-tenths of one inch wide, $2.25 each; if six-tenths of one inch or less wide, $2.50 each;

\*    \*    \*    \*    \*    \*    \*

(c) Parts for any of the foregoing shall be dutiable as follows:

\*    \*    \*    \*    \*    \*    \*

(2) pillar or bottom plates, or their equivalent, shall be subject to one-half the amount of duty which would be borne by the complete movement, mechanism, device, or instrument for which suitable;

\*    \*    \*    \*    \*    \*    \*

(h) For the purposes of this paragraph the width of any movement, mechanism, device, or instrument, shall be the shortest surface dimension through the center of the pillar or bottom plate, or its equivalent, not including in the measurement any portion not essential to the functioning of the movement, mechanism, device, or instrument.

The issue before us, as it was before the trial court, is the proper construction of paragraph 367 (h), *supra*, in the determination of the width of watch movements.

Upon the trial before the Customs Court, the record in the case of *J. Gottlieb* v. *United States*, protest 572906–G, decided adversely to the United States, T. D. 47916, 68 Treas. Dec. 365, was incorporated by stipulation in the record in the instant case, it being understood that appellee would produce the witnesses in said incorporated case for further cross-examination in the instant case, said stipulation reciting that the watch movements here involved are similar in all respects to the watch movements involved in the *Gottlieb* case.

Said incorporated record contains the following stipulation:

It is stipulated and agreed between counsel, in the matter of the above protest, as follows:

1. That the sample submitted herewith and marked "Exhibit 1" is representative of the first four items of watch movements on the invoice (comprising 400,

144, 600, and 270 movements, respectively), which were assessed with duty at $2.50 each under paragraph 367 (a) (1), tariff act of 1930, and may be received in evidence as such.

2. That said watch movements have seven jewels and are unadjusted.

3. That, if either the shoulder extensions or the winding stems of said movements, or both, are excluded in their measurement, they are six-tenths of one inch or less wide.

4. That, if said shoulder extensions are included in the measurement of said movements, they are more than six-tenths of one inch but not more than eight-tenths of one inch wide.

5. That, if so much of said winding stems as is necessary to properly case said movements is included in their measurement, they are more than six-tenths of one inch but not more than eight-tenths of one inch wide.

6. That the issue presented in this case is whether, in the measurement of the watch movements in question to ascertain their width under the method prescribed in sub-paragraph (h) of said paragraph 367, the shoulder extensions or a part of the winding stems, or both, should or should not be included.

The effect of this stipulation, which the parties agree is applicable to the instant case, is that, if the involved movements are six-tenths of one inch or less wide, they were properly classified by the collector at $2.50 each; or, if they are more than six-tenths of one inch wide, they are dutiable as claimed by appellee at $2.25 each.

The controversy arises from the fact that, in determining the width of the involved movements, the collector excluded in his measurement the width of the so-called shoulders and the length of the winding stem, which brought them within the $2.50 classification under paragraph 367 (a) (1), while, if either the shoulders or the winding stem should be included, the movements would be brought under the $2.25 classification.

In the incorporated case two witnesses testified in behalf of the importer, and two witnesses testified in behalf of the Government. In the case at bar appellee did not submit any further evidence except in rebuttal. The Government further cross-examined the witnesses for the importer in the *Gottlieb* case, and introduced the testimony of six additional witnesses. Appellee then called four witnesses in rebuttal.

There was introduced in evidence in the *Gottlieb* case a sample of the movements there involved, and referred to in the stipulation hereinbefore quoted.

With respect to the definitions of the terms "shoulders," "stems," and "pillar or bottom plates," the following, taken from appellee's brief, is conceded to be correct by the Government and *amicus curiae:*

The *shoulders* are narrow extensions on the sides of the pillar or bottom plates of the movements which serve the purpose of holding the movements in a proper position in the cases into which they are put, and also serve to some extent to keep dirt and dust out of the movements. Exhibit 1 has shoulders on four sides.

The *stems,* which extend out from one side of the pillar or bottom plates of the movements a quarter of an inch or more, and have small "crowns" on their outer ends, are for winding and setting purposes.

*Pillar or bottom plates* are the foundation plates upon which the different parts of the movements are erected or built. The dials are attached to the other side of these plates.

With respect to the "stems," it should be added that they are not a part of the pillar or bottom plates.

Most of the evidence in the case relates to the question of whether or not the shoulders upon the involved movements are essential to the functioning of the movement set in a watch case, and with respect to whether the stem is essential to the functioning of the movement, both when set in a watch case and irrespective of the casing of the movement.

The trial court agreed with appellee's contentions, and held that both the shoulders and such portion of the winding stem as was necessary properly to case the movement were essential to the functioning of the latter, and that therefore they should have been included in determining the width measurement of the movement for tariff purposes.

In concluding its opinion the court said:

In the brief filed herein by *amici curiae*, counsel stress the point that the congressional width measurement prescribed in paragraph 367 (h) contemplates that only the width measurement of the pillar or bottom plate must be taken to determine the width measurement of the movement, and that the words "any portion" has reference only to said plate or integral parts thereof. In other words, counsel contends that because the winding stem is not physically and integrally a part of the pillar or bottom plate, it may not be included in determining the shortest surface dimension of said movement. We do not agree with such contention. While the Congress did prescribe that the width of a watch movement shall be the shortest surface dimension *through the center* of the pillar or bottom plate, it is plainly evident that it was the width of the movement itself and not merely of the plate that was to be measured. And included in such measurement must be the measurement of all essential parts of such movement, including the shoulders and as much of the winding stem as may be necessary to enable the movement to function in a case for the purpose for which it was designed.

If counsel means that only the piece of metal which constitutes the foundation of the bottom plate should be measured, that theory certainly finds no support in the prescribed statutory method of measurement. At best, such foundation piece is merely one part of the movement. But to it are attached many other parts. Among them is the winding stem, which is affixed to the plate by a pinion. Even outside the case the movement could not function without the winding stem. And since the stem is encountered in determining the width measurement it must be included. If it were the purpose of the paragraph merely to measure the foundation plate that intent would have been expressed by appropriate language, such as "the width of any watch movement shall be the width of the pillar or bottom plate or its equivalent measured through the center thereof." But the law does not so read. The language as enacted requires that there must be excluded from the width measurement "any portion not essential to the functioning of the movement." That can only mean any portion of the movement that may be encountered in such measurement that may not be essential to the functioning of the movement.

Considering the record as a whole we see no reason for not adhering to our original decision. We therefore hold that the side shoulders and one-eighth of an inch in length of the projecting winding stem of the 142 "6¾" movements here in question should be included in determining the width measurement of such movements, in accordance with the method prescribed in said paragraph 367 (h). That claim is therefore sustained; but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.

We do not find it necessary to review the voluminous testimony in the case, for in our opinion the only question to be determined is the proper construction of paragraph 367 (h); if the trial court has given to the paragraph the correct construction, the judgment appealed from should unquestionably be affirmed.

It is our opinion that said paragraph requires only the measurement of the pillar or bottom plate, excluding from such measurement any portion thereof not essential to the functioning of the movement before being fitted into a case.

It is well established that in the construction of a statute the intention of the legislature is to be deduced from the whole statute and every material part of the same. *United States* v. *Andrews Co.*, 15 Ct. Cust. Appls. 412, T. D. 42589; *Kenyon Co.* v. *United States*, 4 Ct. Cust. Appls. 344, T. D. 33529.

It is also well established that when a provision of law admits of more than one construction, that one will be adopted which best serves to carry out the purposes of the act. *Bernier* v. *Bernier*, 147 U. S. 242.

We would first observe that paragraphs 367 (a) (1), (c) (2), and (h) are new legislation in the Tariff Act of 1930. The Tariff Act of 1922 made no reference to the width of watch movements. We think it is apparent from a reading of paragraph 367 (a) (1) that Congress intended to assess a graduated duty upon watch movements according to the size of their assembled parts, the higher duty being imposed upon the smaller movements, and that this was done presumably upon the theory that the cost of production of watch movements increases as their size decreases; therefore, in order to protect the American watch manufacturers, a higher duty was necessary upon smaller movements than upon larger ones.

In order to insure this, paragraph 367 (h) was enacted. That this paragraph is ambiguous is clear; that it is awkwardly and unhappily worded is certain; and that, standing alone, it is susceptible of two constructions is apparent.

However, bearing in mind that all of paragraphs 367 (a) (1) and (c) (2) should be considered in construing paragraph 367 (h), we think the intention of Congress in enacting paragraph 367 (h) is reasonably clear, and that said last-named paragraph was not properly construed by the trial court, for such a construction does not carry out the intent of Congress.

Having in mind that Congress intended to place a higher duty upon a movement made up of small parts than upon a movement made up of larger parts, we should adopt that construction of paragraph 367 (h) which will best serve such purpose.

It is fair to assume that Congress considered the pillar plate as the basic feature of a watch movement, for in paragraph 367 (c) (2) it is provided that pillar plates shall be subject to one-half the amount of duty which would be borne by the complete movement. Bearing in mind that the pillar plate is the foundation plate upon which nearly all of the different parts of the movement are erected or built, it is plain that the size of the various parts of a movement, generally speaking, is dependent upon the size of the pillar plate. Therefore it seems reasonable to conclude that Congress intended in paragraph 367 (h) that only the pillar plate should be measured, and only so much thereof as was essential to the functioning of the movement, regardless of the case in which it is to be placed; that is to say, only so much thereof as was reasonably necessary for the attachment thereto of the other parts of the movement which are normally attached to the pillar plate.

Obviously, this would exclude from the measurement the length of the stem, which is no part of the pillar plate, and the width of the shoulders, which are necessary only for the encasing of the movement.

It will be observed that neither in paragraph 367 nor elsewhere is there provided any duty upon watches, and they are never classified as entireties, but the watch movements and cases are separately dutiable, even though a complete watch be imported.

We agree with the trial court that the stem of a watch movement is an essential part of such movement. In the case of *Hammel Riglander Pennant Corp.* v. *United States*, 22 C. C. P. A. (Customs) 204, T. D. 47139, we held that, on the record in that case, watch stems and crowns were parts of watch movements.

However, it is our opinion that, as neither crown nor stem is attached to a pillar plate, they should not be measured in determining the width of a watch movement under paragraph 367 (h). Having in mind the object of Congress in determining the width of a watch movement, we can see no purpose in measuring the shoulders or stems, for the width of the former and the length of the latter have no necessary relation to the size of the principal parts of a watch movement. A movement with wide shoulders and a long stem may have smaller parts than another movement with narrower shoulders and a shorter stem.

We do not think that, in providing for the measurement of a watch movement, Congress was at all concerned with such movement being fitted into a case, for the relative size of movements could be much more accurately ascertained without regard to the stem or the shoulders of the pillar plate.

We are clear that paragraph 367 (h) should be so construed, if its language will reasonably bear such a construction.

As the trial court construed paragraph 367 (h), it seems to us that it would in effect read as follows, the words supplied being in italics:

> (h) For the purposes of this paragraph the width of any movement, mechanism, device, or instrument, shall be the shortest surface dimension *of the movement* through the center of the pillar or bottom plate, or its equivalent, not including in the measurement any portion *of the movement* not essential to the functioning of the movement, mechanism, device, or instrument, *when set in a case.*

On the other hand, we think that a construction more in harmony with the object of Congress would regard the paragraph as reading, in effect, as follows, the words supplied being in italics:

> (h) For the purposes of this paragraph the width of any movement, mechanism, device, or instrument, shall be the shortest surface dimension through the center of the pillar or bottom plate, or its equivalent, not including in the measurement *of said plate* any portion *thereof* not essential to the functioning of the movement, mechanism, device, or instrument.

Had the above italicized words, "of said plate" and "thereof," been actually contained in the paragraph, we do not think any claim could be made that anything other than the pillar plate is to be measured in determining the width of a watch movement.

We think our construction of the paragraph is warranted by its language, and is in accord with the intention of Congress that smaller watch movements shall pay higher duties than larger ones.

As we have said, the language of the paragraph is ambiguous. We regret that its legislative history throws so little light upon the intention of Congress in its enactment, but such as there is does not indicate any different construction than we have given the paragraph.

It appears from the hearings before the Committee on Ways and Means of the House of Representatives, Tariff Readjustment 1929, Vol. 3, p. 2364, relative to H. R. 2667 (which later became the Tariff Act of 1930), that a group consisting of the principal American watch manufacturers presented a brief to said committee and made several requests, among which were the following:

> I. We desire to have all time-keeping mechanisms less than 1.77 inches in diameter *as measured across the smallest pillar plate* which will enable the movement to function as a mechanism made presumptively dutiable under this paragraph. Much of the difficulty incurred in the administration of paragraph 367 of the act of 1922 was due to the failure to properly describe those mechanisms which were intended to be covered by its provisions. [Italics ours.]
>
> II. We ask that a base rate be imposed on movements 1.61 inches in diameter and over, and containing less than 8 jewels, of $2.25 each, plus an additional amount for each fraction of an inch by which the size decreases from this size. Watch movements are expensive to manufacture in the United States in direct ratio to their size; the smaller the movement, the higher the cost. A reference to the table of comparative prices contained herein will demonstrate how this additional duty should be worked out to cover the difference existing between

imported and domestic movements of 16 size and imported and domestic movements of 18/0 size, the largest and one of the smallest commercial sizes.

It will be observed that paragraph 367 provides for movements less than 1.77 inches wide, which is exactly what was suggested in the above quoted recommendation, but no specific widths under 1.61 inches were named in the recommendation. It will also be observed that it was requested that the measurement of the movement be "across the smallest pillar plate." This recommendation was not adopted, but is probably the real source of paragraph 367 (h).

We do not hold that the above legislative history establishes that Congress, in enacting paragraph 367 (h), intended that only the pillar plate should be measured, but it is true that such construction is in entire harmony with such legislative history as there is upon the subject.

In view of the fact that the construction given to paragraph 367 (h) by the trial court would tend to defeat the object of Congress in the enactment of paragraph 367 (a) (1), while the construction which we give to it will unquestionably further such object, we are constrained to hold that the trial court erred in its construction; and, under the stipulation hereinbefore quoted, the classification by the collector was proper and appellee's protest should have been overruled.

For the reasons given herein, the judgment of the United States Customs Court is *reversed*.