(C. D. 1287)

CALIF-ASIA CO., LTD. *v.* UNITED STATES

United States Customs Court, First Division

(Decided December 12, 1950)

*Lawrence, Tuttle & Harper* (*Walter I. Carpeneti* of counsel) for the plaintiff.
*David N. Edelstein,* Assistant Attorney General (*Joseph E. Weil, Joseph B. Brady,* and *Harold L. Grossman,* special attorneys), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judge; COLE, J., concurring

MOLLISON, Judge: The merchandise the subject of this protest consists of furniture, including chairs, tables, stools, etc., which was assessed with duty at the rate of 60 per centum ad valorem under the provision in paragraph 409 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 409) reading as follows:

* * * Furniture wholly or in chief value of rattan, reed, bamboo, osier or willow, malacca, grass, seagrass, or fiber of any kind * * *.

Various claims are recited in the protest and in a timely amendment thereto and, although none of these was abandoned by the plaintiff, chief reliance is placed in the claims that that part of the merchandise which consists of chairs is properly dutiable at the rate of 40 per centum ad valorem under the provision in paragraph 412 of the said act for—

* * * furniture, wholly or partly finished, * * * wholly or in chief value of wood, and not specially provided for, * * *

and that the remainder of the merchandise, consisting of tables, stools, etc., is properly dutiable at the rate of 25 per centum ad valorem under the same provision, as modified by the British Trade Agreement, T. D. 49753, reading:

Furniture (other than chairs), wholly or partly finished, wholly or in chief value of wood, and not specially provided for.

Alternatively, it is urged that the merchandise is dutiable under the nonenumerated-manufactured-article provision of paragraph 1558 of the tariff act.

The theory of the plaintiff's case is that the merchandise involved consists of furniture in chief value of cane or peel, as distinguished

from rattan, and is not within the purview of the provision under which duty was assessed.

The case is before us on rehearing, the previous decision of this division being reported in 13 Cust. Ct. 318, Abstract 49836. At that time the controverted question appeared to be whether the merchandise was in fact composed in chief value of cane, as claimed by the plaintiff, and upon the record as it then existed the court came to the conclusion that there had been a failure of proof by the plaintiff in that regard.

While the plaintiff, on the rehearing, has well and sufficiently established that the merchandise invoiced as "peel" furniture was in fact composed in chief value of cane, it is vigorously contended by the defendant that the provision for "Furniture wholly or in chief value of rattan, reed, bamboo, osier or willow, malacca, grass, seagrass, or fiber of any kind," under which duty was assessed, covers furniture made in chief value of cane.

It is undisputed that rattan is a vinelike tropical growth found mostly in Java, Macassar, Borneo, and the Philippine Islands, and that it grows in lengths as long as 200 feet, in various sizes and widths, twining itself around trees. The rattan of commerce is cut in the jungle and straightened and bundled and shipped in bundles of 133⅓ pounds. In such state, only the sharp ends and jungle growths that might be on it are removed.

"Cane" or "peel," the terms being synonymous, according to the witnesses, is the skin of the rattan which is stripped or peeled off. The core of the rattan which remains is known as reed.

It is the plaintiff's position that in the enactment of the provisions of paragraph 409, Congress differentiated between "rattan" and "reed" and "cane" and that the omission from the provision for—

* * * Furniture wholly or in chief value of rattan, reed, bamboo, osier or willow, malacca, grass, seagrass, or fiber of any kind * * *

of furniture wholly or in chief value of cane was a deliberate omission by the Congress. In this connection, it is pointed out that in the first part of the paragraph Congress provided for—

Reeds wrought or manufactured from rattan or reeds, whether round, flat, split, oval, or in whatever form, cane wrought or manufactured from rattan, cane webbing, and split or partially manufactured rattan, not specially provided for, * * *

and thus demonstrated that it was aware of the difference between rattan, reed, and cane.

On the other hand, the Government points to the same language as indicating that by it Congress recognized that there are and were reeds other than reeds wrought or manufactured from rattan, and intended the provision for "Furniture wholly or in chief value of * * *

reed" to cover furniture made of such reeds, leaving the provision for "Furniture wholly or in chief value of rattan" to cover furniture made wholly or in chief value of rattan itself, of reed made from rattan, or of cane made from rattan. It is contended that cane or peel, and reed, all made from rattan, are merely forms of rattan and are properly denominated by the term "rattan."

This contention of the Government finds some support in the definitions given by lexicographers for the terms "rattan" and "cane" from which it appears that they are not necessarily distinguished from each other. The following, consisting of the pertinent portions of certain definitions in Webster's New International Dictionary, 2d edition, 1945, is illustrative:

rattan * * * 1. a * * * Any climbing palm of the genera *Calamus* and *Daemonorops*, remarkable for the great length attained by their stems. b A portion of one of these stems. They are very tough, and are used for walking sticks, wickerwork, chairs, seats of chairs, cords, cordage, etc. See CALAMUS, 3.

2. A rattan cane or switch.

calamus * * * 3. * * * A very large genus of pinnate-leaved climbing palms, natives of tropical Asia. They are slender and tufted, and usually climb over the tallest trees by means of the hooks on the petioles. The light and tough stems, over 600 feet long in some species, furnish the *rattan canes* of commerce. * * *

cane, *n.* * * * 6. a Rattan, esp. split rattan used for wickerwork, the seats of chairs, etc. * * *

We also quote the pertinent portions of the definitions of "rattan" and "cane," as found in Funk & Wagnalls New Standard Dictionary, 1939:

rattan, *n.* 1. One of the long, slender, and flexible stems of several species of climbing palms of the genus *Calamus*, or more rigid stem of certain erect palms of the genus *Rhapis*. The former are very tough and strong, and are used for many purposes, such as making mats, hats, baskets, ropes, wickerwork, chairs, chairbottoms, etc. The stems of the erect palms called, in distinction from the climbing ones, **ground-rattans,** are used largely for walking sticks. * * * 4. Material or substance of rattan.

cane, * * * 2. A slender, hollow-jointed, flexible woody stem. 3. A plant with such a stem, as a bamboo or one of other grasses, a rattan or one of other palms * * *.

Plaintiff offered evidence tending to establish that in the trade and commerce of the United States which deals in such commodities, furniture of the type here in question is known, bought, and sold as "cane" or "peel" furniture and not as "rattan" furniture, the latter term being reserved for furniture made of rattan as distinguished from cane, peel, or reed. On the other hand, evidence offered by the defendant indicates that this is not a uniform practice in that trade and commerce, and indicates that the term "rattan" is also applied to furniture such as that here in issue.

It is urged in the brief filed on behalf of the plaintiff that—

Since Congress provided for furniture of reed as well as furniture of rattan, it is clear that it did not intend furniture of rattan to cover furniture of cane, because, if it did, then it did a useless thing in providing for furniture of reed. It is well established that such a construction, imputing to Congress the use of unnecessary language, is to be avoided. *U. S.* v. *Andrews*, 15 Ct. Cust. Appls. 412, T. D. 42589.

The logic of the foregoing and the applicability of the authority cited would be correct if the fact were established that the term "reed" as used in the tariff act referred only to reed which was the product of rattan. Here, again, resort to lexicographers' definitions as an aid to the determination of the common meaning indicates that the term has a broad significance and is not necessarily restricted to the reed produced from rattan. Thus, Webster's New International Dictionary, 2d ed., 1945, gives the following definition:

**reed** \* \* \* **1.** Any of various tall bamboolike grasses or their slender, often jointed, stems; specif., the ditch reed (*Phragmites communis*) found in marshes throughout temperate and warm regions; also, any other species of *Phragmites* or of *Arundo*, esp. *A. donax*. Cf. CANE, *n.*, **6.**

It is interesting to note that "cane, *n.* 6.," already quoted, refers to rattan, thus bearing out the Government's contention that commonly "rattan" is a rather broad term, embracing both "reed" and "cane."

There was no attempt on the part of the plaintiff at either of the trials had on this issue to establish that the commercial meaning of the term "rattan" differed from the common meaning thereof. There is, therefore, no question under the rule of commercial designation involved, and we must presume that the commercial meaning of the term is the same as its common meaning.

In the brief filed in its behalf, plaintiff cites the rule of construction of legislative differentiation, contending that in the first part of paragraph 409 Congress differentiated between reed, cane, and rattan, and that such distinction employed by Congress in the first part of the paragraph must be followed in the other parts. As we read the provisions in the first part of the paragraph for "reeds," "cane," "cane webbing," and "split or partially manufactured rattan," these words do not amount to a differentiation of these articles from "rattan" but a specific enumeration of certain forms of rattan which shall bear a given duty, without any impairment or limitation of the scope of the broad, general term "rattan."

On the law, and upon the facts as found in the record before us, we are satisfied that the collector's classification of the merchandise was correct. The protest claims are therefore overruled, and judgment will issue accordingly.

## CONCURRING OPINION

COLE, Judge: This case was tried throughout and submitted before a single member of this court on circuit under statutory authorization issued by the chief judge to hear or to hear and determine the case (28 U. S. C. (1946 ed., Supp. III) § 254).

My views set forth in *Geo. S. Bush & Co., Inc., et al.* v. *United States*, 22 Cust. Ct. 158, C. D. 1175, questioning the jurisdiction of the division to decide a case similar to these proceedings, continue as the minority expression from the division. Under the practice and procedure of the court and the rules applicable thereto, much litigation before the court is dependent upon my participation in a decision of the same. Adhering, however, to my views expressed in the *Bush* case, *supra*, but for the purpose of expediting the work of the court, I am joining my colleagues in the disposition of this case, and concur in the opinion and judgment attached thereto.